Charles J. MAYSON,
Plaintiff-Appellant,

v.

Samuel R. PIERCE, Jr., et al.,
Defendants-Appellees.

No. 85–8449.

United States Court of Appeals,
Eleventh Circuit.

Jan. 6, 1987.

John W. Wilcox, Jr., Atlanta, Ga., for plaintiff-appellant.

Myles Eastwood, Asst. U.S. Atty., Atlanta, Ga., for defendants-appellees.

Before RONEY, Chief Judge, CLARK, Circuit Judge, and FAIRCHILD *, Senior Circuit Judge.

---

* Honorable Thomas E. Fairchild, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

PER CURIAM:

Plaintiff was the prevailing party in this reverse discrimination case brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e *et seq.* The only issue on appeal involves the amount awarded as attorney's fees. Plaintiff's attorney requested an attorney's fees award at the rate of $150 an hour, which he claimed as his regular billing rate for non-retainer clients. The district court determined that $75 an hour was a reasonable rate. Plaintiff also requested reimbursement for the counsel fees in a related criminal proceeding which the plaintiff alleged constituted harassment in violation of the Act. The district court denied the request for those fees. The findings and reasoning of the district court on both of those matters is fully set forth in its order attached hereto as an appendix. We affirm.

■ The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984). The district court properly followed the guidance of those cases on a matter of law. There has been no dispute as to the number of hours expended, so the issue on appeal is whether the hourly rate set by the district court was reasonable.

The matter was determined on affidavits, without live testimony, apparently without objection. On this appeal, the appellant does not ask for an evidentiary hearing but simply asks this Court to set a fee between $120–$150 an hour, or in the alternative, direct the district court to do so.

Plaintiff submitted affidavits from prominent Atlanta attorneys to the effect that they would charge about $150 an hour for defending a civil rights case, and that they considered $150 to be a reasonable fee. Plaintiff also submitted evidence of the rates he had charged other clients, a national survey of average hourly rates, attorney's fees awards in other cases in the Northern District of Georgia, and a survey of Atlanta Bar Association members. The Government countered with other affidavits from three local attorneys. One attorney, who has been practicing law for 50 years, stated that although it might be reasonable to charge a management client $120 an hour in a Title VII case, the same lawyer would charge an individual Title VII plaintiff $75 an hour because the individual would not likely be able to bear the expense of a loss if a significantly higher hourly rate were charged. This attorney also opined that $75 was a reasonable rate for plaintiff's attorney because he would not have received more than this amount if he had lost the case, and that in the context of Title VII litigation, plaintiff's attorney was relatively "inexperienced."

Another lawyer, who has practiced and written extensively in the labor law and employment discrimination fields and was Chairman of the Labor Law Section of the Atlanta Bar Association, also opined that plaintiff's attorney should be compensated at a $75 hourly rate. He noted that representation before a federal agency in an EEO case does not require the same level of competency and experience as required in federal district court and in NLRB proceedings, and generally commands lower fees. He also noted that there was no contingent risk and that representation of a charging party in a federal sector Title VII administrative proceeding carries no stigma for a management labor lawyer.

Finally, a third lawyer, who has practiced for 20 years, also stated that while $120 an hour might be reasonable to charge a management client in a Title VII case, $75 an hour was a reasonable rate for an individual Title VII plaintiff. He also addressed the "experience," "contingency," "complexity," and "desirability" factors, finding none of these to justify a higher hourly rate.

■ In light of this record, this Court cannot say that even if plaintiff's attorney would normally have charged a higher rate, the district court abused its discretion in

deciding that $75 an hour is a reasonable rate for the work done in this case.

The plaintiff has not challenged the district court's application of the other factors to be taken into consideration in making an award of attorney's fees. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

■ With respect to plaintiff's claim for attorney's fees in the related criminal proceeding, the district court correctly held that Title VII does not envision reimbursement for legal work done in criminal cases, even if the criminal proceeding was instigated in violation of Title VII, especially when the defendant did not prevail in that litigation.

AFFIRMED.

APPENDIX

CHARLES J. MAYSON, Plaintiff,

vs.

SAMUEL R. PIERCE, JR., as Secretary of the United States Department of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendants.

CIVIL ACTION

No. C 83–894 A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

ORDER

This is an appeal pursuant to 42 U.S.C. § 2000e–16(c) from the final decision of the Department of Housing and Urban Development awarding the plaintiff attorney's fees in a Title VII action which the plaintiff had prosecuted through that department. The plaintiff asks this court to enter an award of attorney's fees for the prosecution of that administrative claim in an amount greater than that awarded by the department together with additional attorney's fees and costs in connection with the prosecution of this appeal. This matter has been fully briefed by the parties and is now ripe for decision by this court.

The record shows that the plaintiff filed an Equal Employment Opportunity complaint in 1975 alleging that he had been discriminated against in a promotion. The EEOC found that the plaintiff had been discriminated against because of his race but further found that notwithstanding the discrimination he would not have been selected for the promotion. The EEOC found that priority consideration was an appropriate remedy. (Subsequently, that decision has been reopened by the EEOC as to relief, but that matter is irrelevant in this action.) After the plaintiff filed his prior complaint and while that action was being handled administratively, an anonymous letter was hand delivered to the agency's inspector general officer by an agency employee. That letter accused the plaintiff of having falsified travel vouchers. An investigation was conducted, and the matter was referred to the U.S. Attorney's Office. On May 15, 1980, the plaintiff was indicted in the Northern District of Georgia on fifteen felony counts of travel voucher fraud to which he pled nolo contendere. Upon this plea he was sentenced to repay the money, fined $100, and given suspended three month sentences on each count.

In June 1980, the plaintiff filed an EEO complaint alleging that the vigorous investigation and prosecution of his criminal conduct constituted reprisal and harassment because of his prior action. The EEOC's complaints examiner issued a recommended decision in which the plaintiff's allegations of reprisal were found to be meritorious. The department's EEO director upheld the recommended decision, stating that because of the complaint filing, "the officials of the Department pursued their activities with more vigor and intensity than they would have had such protected activity not taken place." The relief ordered was simply that no further action be taken on the subject of the investigation and that the

plaintiff receive attorney's fees. Of course, no further action could have been taken since the plaintiff had already pled and been sentenced.

Pursuant to the award of attorney's fees, the plaintiff submitted a motion requesting $23,521.88. This figure was arrived at by calculating 110.25 hours at $150 per hour plus a 25% "incentive fee"; the amount also included $2850 for the fees of Mr. Charles Read, the attorney who represented the plaintiff during his criminal investigation and indictment. On April 11, 1983, the EEO director issued the final decision regarding the plaintiff's attorney's fees award, awarding $8165.25, based on 106.75 hours at $75 per hour. The reduction in hours from 110.25 hours to 106.75 hours was the result of the director's reducing the number of hours by 3½ hours for time spent during the administrative hearing. The EEO director stated, "Mr. Wilcox listed 6 days at 8 hours per day. The transcript of the hearing indicates that the actual hearing time, including lunch and all breaks, was about 38½ hours. We have adjusted this time to include an additional 1 hour per hearing day commuting time from Mr. Wilcox' office to the hearing and return. The total hours for hearing days would therefore be 44½ hours. Accordingly, for purposes of this decision we're using 106.75 hours as the number of hours reasonably expended." On this appeal the defendant does not question the reasonableness of the original 110.25 hours submitted by the plaintiff, and the court will base its decision upon the 110.25 hours, not the 106.75 allowed by the EEO director.

In determining the amount of attorney's fees to be awarded, this court is guided by *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and the twelve standards set forth in that opinion. However, the court is also mindful of *Hensley v. Eckerhart,* [461] U.S. [424], 103 S.Ct. 1933 [76 L.Ed.2d 40] (1983), and *Blum v. Stenson,* [465] U.S. [886], 104 S.Ct. 1541 [79 L.Ed.2d 891] (1984). In *Hensley* the Supreme Court noted, "The most useful starting point for determining the amount

of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." [461] U.S. at 433, 104 [103] S.Ct. at [1939]. The court further noted that when a plaintiff obtains "excellent results," the plaintiff in that case may be entitled to an enhanced award. *Blum* and *Hensley* both recognize that many of the twelve *Johnson* factors are subsumed in number of hours expended and the hourly rate. These calculations are used to determine the lodestar amount, and only exceptional factors will warrant an enhancement of that lodestar amount. For example, in considering the second *Johnson* factor, the Supreme Court in *Blum* stated:

> The novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates. There may be cases, of course, where the experience and special skill of the attorney will require the expenditure of fewer hours than counsel would normally be expected to spent on a particularly novel or complex issue. In those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates. Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether the increase the basic fee award.

[465] U.S. at [898–99], 104 S.Ct. at 1548–49.

As noted above, the total number of hours expended by the plaintiff's counsel, 110.25, is not contested. However, an issue is presented as to what would be a reasonable hourly fee. The fee agreement between the plaintiff and his counsel provided that if the plaintiff prevailed, his attorney would get whatever attorney's fees were awarded and if the plaintiff did not prevail, he would be charged only half of his counsel's regular, non-retainer hourly rate. In his fee application to the Department of Housing and Urban Development, the plaintiff's counsel stated that his

usual and customary hourly charge was $110 for retainer clients and $150 for non-retainer clients. However, in a later deposition, the plaintiff's counsel testified that at the time he started representing the plaintiff he was charging $120 for non-retainer clients and $90 for retainer clients. Later his fee for retainer clients was increased to $110 per hour. Furthermore, despite counsel's assertion that he charged non-retainer clients $120 an hour, he objected to the interrogatory which asked for the hourly fees charged to his non-retainer clients for the years 1977 through 1980; however, he did state that he had no clients that he considered non-retainer clients in his specialty of labor employee relations, including employment discrimination matters, but did list four non-retainer clients, including two relatives, a close personal friend, and a fourth person. Those non-retainer clients are insufficient to show that counsel's regular fee for non-retainer clients was $120 per hour.

The defendant has submitted the affidavits of Hamilton Lokey, Charles A. Edwards, and Gerald F. Hanley, all of whom state their opinion that a reasonable hourly fee in this case would have been $75. Both Mr. Handley and Mr. Lokey note that although $120 or $150 per hour might be a reasonable fee to charge a management client in a Title VII case, a substantially reduced fee is normally charged to individual clients. This is based upon the fact that corporate clients usually are more financially able to pay a higher fee and further that constant demands on time and consultation that regular clients make upon attorneys and the long-term and on-going relationship that such clients have with their attorneys permit charging a higher fee to corporate clients. The court finds that $75 per hour is a reasonable fee to be awarded in this case.

Considering whether this fee should be enhanced, the court will consider the *Johnson* factors insofar as they are relevant.

The questions presented were neither novel nor difficult. Although a reverse discrimination suit may be unusual, the legal issues and method of proof are identical to a normal discrimination action.

The plaintiff possessed the requisite skill to perform the legal services properly, and his degree of skill is reflected in the fact that his hours are reasonable and that he did not need to expend time familiarizing himself with a new area of the law.

Handling this case did not preclude the plaintiff's counsel from other employment except to the extent that, like any case, working on a matter necessarily precludes working on any other matters during such hours of work. The fact that this was a long case is irrelevant to this factor, since the length of the case is reflected in, and compensated by, the hours expended.

The court finds that $75 per hour is within the limits of the customary fees charged for such work in the Atlanta area.

There was no contingent fee agreement in this case. The term "contingent fee" means that the attorney gets paid if his client wins and does not get paid if the client loses. The fact that the client may have contracted for a larger fee, contingent upon certain factors, does not mean that the fee is "contingent" as that term is used in *Johnson. See Pharr v. Housing Authority of the City of Pritchard [Prichard], Alabama,* 704 F.2d 1216 (11th Cir. 1983).

There was no time limitation imposed by the client or the circumstances such that would warrant any enhancement or reduction in the lodestar figure.

With regard to the amount involved and the relief obtained, the court finds that the plaintiff received only a small portion of what he was seeking in the administrative process. In his EEO complaint, the plaintiff requested recovery of attorney's fees incurred during his criminal prosecution and indictment, reimbursement of the loss of pay during his two week suspension, receipt of an apology or statement in his personnel file, and an agreement by the Department of Housing and Urban Development that no more harassment or dis-

crimination would occur. However, the only relief that the plaintiff obtained was the assurance that no further action would be taken against him based upon the investigation that was the subject of his complaint and attorney's fees (exclusive of the attorney's fees incurred during his criminal prosecution and indictment). The relief obtained was not "exceptional" especially since the criminal investigation had already been concluded and the plaintiff had entered a plea of nolo contendere. This court finds that the results obtained do not warrant an enhancement of the lodestar fee.

The court finds that the experience, reputation, and ability of the plaintiff's counsel are satisfactory and are properly reflected in the number of hours expended on this case. (The defendant sought to raise an issue with regard to whether the plaintiff's counsel had sought to foreclose the criminal investigation against his client by seeking to intimidate the Assistant U.S. Attorney handling the case by contacting the U.S. Attorney and, perhaps, seeking to apply political pressure. The court simply did not consider these allegations with respect to this factor or with respect to this case.)

The court finds that the case was not undesirable and would in no way reflect adversely upon the plaintiff's counsel in the community.

The court finds that the nature and length of the professional relationship between the plaintiff and his counsel was not of a long, on-going nature and would not warrant either an increase or decrease in the lodestar amount.

Finally, the court finds that, based upon the affidavits presented, awards in similar cases do not warrant an increase or decrease of the lodestar amount.

The court will not award any fees because of the work of Mr. Read in the plaintiff's criminal case. Title VII does not envision reimbursement for work in criminal cases, especially when the criminal action concludes with a plea of nolo contendere.

The court finds that the plaintiff is not a "prevailing party" in these proceedings since the court finds that the amount of fees awarded by the EEO director was correct (with the minor exception of the 3½ hours, which the government did not contest on appeal); consequently, the court will not award any fees to the plaintiff for prosecuting this appeal.

The clerk will enter judgment modifying the decision of the Department of Housing and Urban Development by awarding $75 per hour for 110.25 hours as attorney's fees and affirming the decision as modified.

SO ORDERED, this 15th day of April, 1985.

/s/ Robert L. Vining, Jr.
ROBERT L. VINING, JR.
United States District Judge

CLARK, Circuit Judge, dissenting:

I dissent from the majority opinion for the following reasons, each of which will be subsequently elaborated upon. (1) The opinion perpetuates the deplorable past practice of fixing an attorney's "reasonable hourly rate" by approving the use of affidavits at the extremities. It has been the custom for many years for an attorney seeking court approved fees to submit affidavits from friendly attorneys who state that a reasonable rate is that which approximates the highest rate charged in the community. These affidavits are opposed by those from friends of defense counsel who swear to the reasonableness of the lowest rate which is charged by parts of the legal community. This does not make any common sense; it is time it is stopped, some courts have done so, and so should we. (2) The proper method is to fix a fee based upon the attorney's regular hourly billing rate, which he must prove from his billing records. In addition, the attorney seeking the fees must establish that his rate is in the range of the prevailing market rate in the relevant community for similar legal representation. (3) The majority and the district court compound the problem by setting up a two-tiered rate scheme as between attorneys who represent a corporation on a regular basis and attorneys who represent individuals on a random basis.

## I. How Should A "Reasonable Hourly Rate" Be Determined?

### A. The Improper Way.

The district court opinion and the majority approve a long practice of the fee seeking attorney procuring affidavits that suggest the highest hourly rate, and his opponent procuring affidavits suggesting the very minimum hourly rate. These extremes which were used in this case, while not ridiculous, are not realistic. The usual hallmark of such affidavits, and it is true here except for Mr. Wilson's, is that the affiant never states what he would have charged per hour had he handled the law suit. The language is always that the affiant has practiced so many years in the community, that he is familiar with fees charged for similar work, and in his opinion $75 or $150 is a reasonable fee. Sometimes the lawyer says he would charge $75 or $150 for such a case, but he never states that he has or will take such a case at such a fee. If this practice continues, and it is obvious from the majority's blessing it will, district courts should require an attorney who submits such an affidavit to state (1) that he handles similar types of legal matters, (2) that he charges a certain hourly rate for such work, and (3) that he is willing to submit in proof thereof copies of his bills with the name of the client omitted, subject to review by the court in camera of the originals if the court desires. Additionally, I would require such attorney affiants to give the factual basis of any conclusion that a certain hourly rate is reasonable, by relating specific knowledge of fees charged by other attorneys for similar litigation, and the basis of such knowledge. None of the affidavits in this case meet these requirements.

### B. The Proper Method of Determining the Reasonable Hourly Rate.

Title 42 U.S.C. § 2000e–5(k) provides that in Title VII actions "the court ... may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." [1] The purpose of this and related statutes is to ensure effective access to the judicial process for persons who have claims under the civil rights laws. S.Rep. No. 1011, 94th Cong., 2d Sess. 2–6, *reprinted in* 1976 U.S. Code Cong. & Admin.News 5908, 5909–13. As further stated by this court, the purpose of the award of attorney's fees is "to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economic burden of Title VII litigation." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir.1974).

The analysis starts at the same point used by the Court in *Hensley v. Eckerhart, supra:*

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Id.*, 461 U.S. at 433, 103 S.Ct. at 1939. The Supreme Court spoke approvingly of using the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc., supra* and later in its opinion said the following:

> The district court also may consider other factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (CA5 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. See *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 400, 641 F.2d 880, 890 (1980) (en banc).

*Hensley, supra* at 435 n. 9, 103 S.Ct. at 1940 n. 9.

Courts and commentators have suggested that while the *Johnson* factors remain

---

1. Title 42 U.S.C. § 2000e–16(c), (d) makes this fee provision available to federal employees pressing employment discrimination suits against the federal government, such as in this case.

central to any fee award, a simple articulation of them does not translate into dollars. *See Copeland v. Marshall,* 641 F.2d 880, 890 (D.C.Cir.1980); Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?,* 126 U.Pa.L.Rev. 281 (1977). The Supreme Court has not discussed the starting point in assessing a reasonable hourly rate for private counsel, its only discussion of the subject being that in *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), in which the Court held that reasonable fees ought to be calculated according to prevailing market rates in the relevant community regardless of whether plaintiff is represented by private or nonprofit counsel. That case raised the issue of whether a public interest non-profit legal service organization would be awarded fees on the basis of cost or prevailing market rates. The Court did discuss the inherent difficulty in determining "market rate," stating in note 11: "and the rates charged in private representations may afford relevant comparisons."

The starting point in assessing reasonable fees when the successful litigant is represented by private counsel is his regular hourly billing rate so long as that rate is within the upper and lower limits of rates charged by comparable attorneys in the same community for similar work. I find helpful the statement of Chief Justice Burger in his concurrence in *Hensley v. Eckerhart, supra,* 461 U.S. at 440, 103 S.Ct. at 1943. "It would be inconceivable that the prevailing party should not be required to establish at least as much to support a claim under 42 U.S.C. § 1988 as a lawyer would be required to show if his own client challenged the fees." Thus, the attorney for a successful litigant should establish first that the number of hours he worked on the case was reasonable, then prove what his prevailing billing rate is for other clients, and that such a rate is within the bracket of that charged for similar work by comparable attorneys in his community. Once this is established, the attorney has established a prima facie case subject to further analysis by use of the remaining *Johnson v. Georgia Highway Express, Inc.* factors.

I select this simple criteria as a presumptive beginning point for the reason that neither the government nor a private litigant should be required to pay an attorney in civil rights litigation a fee higher than that which he would charge other clients on a quantum meruit in his regular practice, and neither should the defending litigant expect to pay less. If there are enhancement factors such as the contingent nature of the fee, extraordinary results obtained in the case, or harassing defensive tactics on the part of the defendant, the district court can consider any evidence with respect to such additional factors. Such a system would, I believe, facilitate the proper administration of these cases by the courts and the furtherance of settlement as mandated in *Hensley v. Eckerhart, supra,* and *Blum v. Stenson, supra.*

A number of other courts have held that the attorney's billing rate will usually establish the appropriate factor to multiply by the number of hours. *See, e.g., Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4 (D.C.Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985) ("In almost every case, the firms' established billing rates will provide fair compensation"); *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (en banc) (court approved fees based upon the hourly rates customarily charged by the lawyers in the firm); *National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1325 (D.C.Cir.1982) ("The best evidence would be the hourly rate customarily charged by the affiant himself or by his law firm."); *Pawlak v. Greenawalt,* 713 F.2d 972, 979 (3d Cir.1983) ("The value of an attorney's services is generally measured by his billing rate."), *cert. denied sub nom. International Brotherhood of Teamsters v. Pawlak,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984); *Louisville Black Police Officers Organization, Inc. v. City of Louisville,* 700 F.2d 268, 277 (6th Cir.1983) ("As was pointed out in *Northcross [v. Board of Education of the Memphis City Schools]* the marketplace normal-

ly sets a value for a private attorney's services: 'the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney.' 611 F.2d [624] at 638 [ (6th Cir.1979) ]."); *Taylor v. Philips Industries*, 593 F.2d 783, 787 (7th Cir.1979) (affirming district court's choice of hourly rate that coincided with attorney's long-standing billing rate); *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973) ("The value of an attorney's time generally is reflected in his normal billing rate."); *Murray v. Weinberger*, 741 F.2d 1423, 1428 & n. 21 (D.C.Cir.1984).

This approach intimated by the Supreme Court and clearly enunciated in *Laffey* also squares with the suggestion of one commentator:

> The court must determine a value for the attorney's time that will place statutory fee cases on a competitive economic basis and that will compensate attorneys in equitable fee cases for the loss sustained in creating the appropriated benefit. For lawyers engaged in customary private practice, who at least in part charge their clients on an hourly basis regardless of the outcome, the marketplace has set that value. For these attorneys, the best evidence of the value of their time is the hourly rate which they most commonly charge their fee-paying clients for similar legal services. This rate reflects the training, background, experience, and previously demonstrated skill of the individual attorney in relation to other lawyers in that community.

Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U.Pa.L.Rev. 281, 321 (1977).

Applying this criteria to the present case should not be difficult. Attorney Wilcox in his submission to the court attached copies of numerous bills he had submitted to private clients during the relevant period, R. 186–220, showing billings at $90 to $110 per hour. Mr. Wilcox's deposition reflects that over 90% of his practice is representation of management in the labor relations and employment discrimination field. He testified that he undertook the representation of Mayson in this case at the request of a fellow attorney who told him that Mayson had been unable to obtain an attorney. Wilcox agreed with Mayson to undertake the representation and charge his regular fee if the case was successful less the fees paid by the government or half of his regular fee if the case was unsuccessful. I agree with the district court that the plaintiff failed to make out a basis of Mr. Wilcox's charging fees on the basis of a rate he charged non-retainer clients. Since Mr. Wilcox had so few non-retainer clients, he had no regular billing rate in the employment discrimination litigation specialty for non-retainer clients. The eleventh factor in the *Johnson* analysis is "the nature and length of the professional relationship with the client." In my opinion, the case should be remanded so that the district court might in its discretion determine whether any fee enhancement would be appropriate in light of the fact that Mr. Mayson was a one-time client.

## II.

The district court further erred in this case by setting up a two-tiered rate scheme for the award of attorney's fees which distinguishes between corporate/management and individual clients. Such an approach to the awarding of attorney's fees runs contrary to both precedent and legislative intent.[2]

---

2. I also note that the "fact" upon which the district court, in part, based its two-tiered rate scheme is not quite accurate. The court observed "that constant demands on time and consultation that regular clients make upon attorneys and the long-term and on-going relationship that such clients have with their attorneys permit charging a higher fee to corporate clients." Record, Vol. II, at 386–87. To the contrary, chroniclers of the business of law indicate that regular clients which account for a great deal of the time and, thus, income of a firm are often billed at a discount. *See* J. Stewart, *The Partners* 23, 320 (1983); P. Hoffman, *Lions in the Street* 85 (1973).

"The reasonable value of an attorney's time does not depend on who[m] his or her adversary is." *Rodriguez v. Taylor,* 569 F.2d 1231, 1249 n. 32 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). Neither, therefore, does it depend upon whom his or her client is. In *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (en banc), the representation of the claimant was undertaken on a pro bono publico basis by the large Washington, D.C. law firm of Wilmer, Cutler & Pickering. When the claimant ultimately prevailed, his attorneys requested fees based upon the firm's normal hourly rates, which were those charged to its regular roster of almost exclusively corporate clients. The fee request was documented by statistics indicating the firm's normal hourly rates for the attorneys representing the claimant and by a letter from the Lawyer's Committee for Civil Rights Under Law stating that these rates fell within the range typically charged by large Washington firms in employment discrimination cases. Both the district court and the court of appeals, sitting en banc, found these rates reasonable and approved them under the required standard that they be the reasonable hourly rate prevailing in the community for similar work. The hourly rates approved were, as the courts specifically found, the rates normally charged by Wilmer, Cutler and other similar firms to corporate clients; yet both the district court and the en banc D.C. Circuit employed these same rates to set the reasonable hourly rates to be awarded for representing individual claimants.

The district court in this case has not cited any precedent or public policy to support its two-tiered rate structure for discriminating between corporate/management and individual clients. Congress has clearly stated that the purpose of awards of attorney's fees under this and related statutes is to provide for "fees which are adequate to attract competent counsel." S.Rep. No. 1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5913. *Accord* H.R.Rep. No. 1558, 94th Cong., 2d Sess. 8. Likewise, this court has noted that this statute was passed "to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economic burden of Title VII litigation." *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 719. A ruling such as that of the district court providing that awards of attorney's fees to individuals must be based upon an hourly rate between 40% and 50% lower than that available for counsel to corporations and management, who will in many cases be opposing the claimant in cases such as this, is thus directly contrary to this purpose underlying the statute in that such a two-tiered fee structure is undeniably *not* calculated to attract "the caliber of counsel available to their opposition."