**Doris STAMEY, Plaintiff,**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Defendant.**

**Civ. A. No. C83–2648A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 24, 1987.

Harris R. Anthony, James L. Ford, Ford & Haley, Atlanta, Ga., for plaintiff.

Keith W. Kochler, King & Spalding, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

■ This action arose under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA") and was tried before a jury beginning August 19, 1985. On August 23, 1985, the jury returned a verdict in plaintiff's favor finding that defendant willfully violated the ADEA. By order of June 23, 1986, this court granted plaintiff's motion to amend the judgment to include an award of liquidated damages[1], directed the defendant to reinstate plaintiff and directed the parties to confer in an effort to reach agreement regarding the amount of pension benefits due plaintiff. The action is currently before the court for resolution of four issues: (1) plaintiff's motion for reconsideration of the court's order of reinstatement rather than front pay; (2) liquidated damages on plaintiff's pension benefits; (3) plaintiff's entitlement to back pay at the management level; and (4) the award of attorneys' fees.

### 1) *Reinstatement/Front Pay*

Plaintiff moves the court to reconsider its June 23, 1986 order of reinstatement.

In the June 23 order the court considered and rejected plaintiff's argument that defendant's work environment is too hostile and demeaning toward her to allow reinstatement. See Order at 7. Nonetheless plaintiff reiterates her assertion that plaintiff suffered and will suffer humiliation and discord if returned to defendant's employ. Plaintiff has raised no new arguments or evidence on the issue of reinstatement. The court previously considered plaintiff's argument that defendant's work place is too hostile toward her to allow reinstatement. After considering the evidence, the court rejected her argument particularly in light of defendant's showing that the members of its staff who were allegedly hostile and demeaning toward plaintiff have all left defendant's employ.

Plaintiff additionally restates her argument that if she is to be reinstated she must only be reinstated to a management level position. The court likewise considered and rejected this precise argument in its June 23, 1986 order. Again, plaintiff raised no new evidence on this issue and the court will not vacate its earlier finding that "reinstatement to a management position is not required." Order at 7. Accordingly, the court DENIES plaintiff's motion for reconsideration of the court's June 23, 1986 order of reinstatement.

■ Following this court's June 23, 1986 order of reinstatement, defendant unconditionally offered to reinstate plaintiff to a nonmanagement position. Defendant therefore complied with the court's order requiring reinstatement of plaintiff to a position similar to that provided other Customer Instructors upon the termination of their positions (i.e., nonmanagement). In

---

**1.** The court based its award of liquidated damages on *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Because the jury had been charged in the issue of willfullness and specifically found defendant willfully violated the ADEA, the court concluded that liquidated damages were warranted under *Thurston.* The Eleventh Circuit Court recently held that under *Thurston* a plaintiff is entitled to an award of liquidated damages in addition to prejudment interest on the backpay award. *Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094 (11th Cir.1987). In *Lindsey* the Eleventh Circuit concluded that "both prejudment interest and liquidated damages in an ADEA case does not constitute double compensation" because prejudment interest serves to compensate while liquidated damages are punitive in nature. *Id.* at 1103. In the instant action the jury found defendant willfully violated the ADEA and awarded plaintiff backpay. Accordingly, plaintiff is entitled prejudment interest on the backpay as well as liquidated damages.

response to defendant's offer of reinstatement, plaintiff advised defendant that she did not wish to be reinstated to a nonmanagement position and that for purposes of resolving the damages issue, defendant could base all back pay and damage calculations on an agreed upon retirement date of July 23, 1986.

Plaintiff's refusal to accept reinstatement was contrary to the express order of this court. Although plaintiff sought to have this court vacate its order regarding reinstatement, as noted above, plaintiff's motion for reconsideration was not supported by any new evidence or arguments. Plaintiff contends that the agreed upon retirement date of July 23, 1986 was merely suggested in conjunction with settlement negotiations and that plaintiff's damages should be calculated as if she were still employed by defendant. The court finds, however, that plaintiff's refusal to accept defendant's offer of reinstatement was unreasonable given this court's June 23, 1986 order in which it made clear that it considered and rejected plaintiff's arguments against reinstatement.

The Eleventh Circuit Court of Appeals has stated that "an unreasonably refused offer of reinstatement will preclude recovery of both frontpay and backpay." *O'Donnell v. Georgia Osteopathic Hospital, Inc.*, 748 F.2d 1543, 1550 (11th Cir. 1984). Furthermore, the United States Supreme Court has held, "an employer charged with unlawful discrimination often can toll the accrual of backpay liability by unconditionally offering the claimant the job he sought [or similarly, reinstatement], thereby providing him with an opportunity to minimize damages." *Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 232, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). Accordingly, plaintiff's refusal of defendant's reinstatement offer as of July 23, 1986 tolled defendant's backpay liability and precluded plaintiff's recovery of both frontpay and backpay as of that date. For purposes of calculating plaintiff's damages, therefore, the court deems plaintiff to have retired from Southern Bell on July 23, 1986.

*2) Pension Benefits*

Plaintiff and defendant apparently have agreed on plaintiff's entitlement to a pension of $1,039.87 per month. Plaintiff contends, however, that she should receive the pension payment in a lump sum which should be liquidated. Plaintiff argues that the lump sum pension payment is an element of backpay which should be liquidated given the jury's finding that defendant willfully violated the ADEA.

Plaintiff's argument in favor of a lump sum payment of her pension benefit is, in essence, a motion for reconsideration. In its June 23, 1986 order this court considered and rejected plaintiff's request that the court calculate plaintiff's monthly pension rate over her life expectancy and award her the present value of the total. Plaintiff subsequently requested the court award her a lump sum pension benefit calculated at the agreed upon rate pursuant to the method previously rejected by the court.

In its June 23, 1986 order the court found that plaintiff could be made whole for any diminution in her pension through: (1) a one time payment reflecting lost pension benefits for the three year period prior to filing her complaint through the date of the order; (2) and upon retirement, a recalculation of plaintiff's pension based on her salary and net credited service. The court finds that this method of calculating plaintiff's pension benefits remains to be equitable and will make plaintiff whole.

Given the court's finding above that plaintiff's effective retirement date was July 23, 1986, plaintiff's pension benefits should be recalculated to include a one-time payment reflecting lost benefits through July 23, 1986, at which time plaintiff should have begun receiving monthly pension payments at the agreed upon rate. Because the court has found that plaintiff's refusal to accept reinstatement as of July 23, 1986 precludes her receiving further backpay, the pension payments made from that date forward should not be liquidated. On the other hand, the one-time payment reflecting the difference between pension benefits

received and owed from three years prior to the date of the court's June 23, 1986 order to July 23, 1986 does represent backpay to plaintiff and must therefore be doubled as liquidated damages.

### 3) *Back Pay at Management Level*

■ Plaintiff and defendant failed to stipulate to the amount of backpay owed plaintiff between the date of the jury verdict (August 23, 1985) and plaintiff's effective retirement date (July 23, 1986). Plaintiff contends she is entitled to back pay for that eleven month period at a management level. Defendant argues that plaintiff is only entitled to an award of back pay at a nonmanagement level. Defendant argues that it had no duty to reinstate plaintiff to a management position and that no other displaced Customer Instructor was transferred to a management position. Defendant concludes, therefore, that it had no duty to compensate plaintiff at a management level.

In support of its argument, defendant notes that the jury based its finding of discrimination in pay and benefits on its conclusion that plaintiff, as a Customer Instructor, was performing duties substantially similar to those performed by younger management personnel. Defendant suggests, therefore, that because plaintiff would not have performed duties substantially similar to a manager's duties had she worked between August 23, 1985 and July 23, 1986, she is not entitled to back pay for that period at a management level. Defendant further suggests that the jury erred in awarding plaintiff backpay at a management level because, according to defendant, once it abolished the Customer Instructor position, the "similarity linkage" disappeared and a management pay differential was no longer warranted. See Defendant's Reply to Plaintiff's Memorandum on Remaining Matters of Relief, pp. 3–4 (filed July 21, 1986).

Although defendant suggests the jury overstated plaintiff's award, it does recognize that in light of the jury's finding that defendant discriminated against plaintiff by compensating her at a non-management level, *"so long as plaintiff is afforded non-discriminatory pay treatment,* her reinstatement into a non-management title will not offend the jury's verdict." Defendant's Response to Plaintiff's Motion for Award of Attorney's Fees and Other Post-Judgment Relief, p. 8 n. 3 (filed May 7, 1986) (emphasis added). Therefore, although defendant takes issue with the jury finding, it nonetheless admits that it must conform to the jury verdict.

Defendant argued before the jury that plaintiff, like all other displaced Customer Instructors, would have been transferred to an equal or lesser paying position had she not taken early retirement. See Trial Transcript Vol. 4, pp. 14–26 (Aug. 22, 1985); Trial Transcript Vol. 3, pp. 67–81 (Aug. 21, 1985). Despite defendant's presentation of such evidence, the jury found that defendant had discriminated against plaintiff on the basis of her pay and benefits and awarded plaintiff backpay at a management level. In accordance with the jury's verdict, the court finds plaintiff is entitled to backpay at management level up to the date of her effective retirement on July 23, 1986.

### 4) *Attorneys' Fees*

■ Plaintiff moves the court for an award of attorneys' fees and expenses of litigation. Awards of attorneys' fees in age discrimination actions are governed by 29 U.S.C. § 216(b) which provides: "[t]he court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant...." *See* 29 U.S.C. § 626(b) (rendering § 216(b) applicable to ADEA actions). To determine a "reasonable" attorney's fee the court must first ascertain the "lodestar" figure consisting of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Mayson v. Pierce,* 806 F.2d 1556, 1557 (11th Cir.1987) (*citing Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)).

Until recently, determination of a reasonable attorney's fee included both a calculation of the lodestar amount and considera-

tion of several other factors which might support either an upward or downward adjustment in the fee award. Traditionally, the "other factors" a court considered were drawn from the twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974).[2] In successive Supreme Court decisions, however, these factors have been pared down.

In *Hensley v. Eckerhart, supra,* the Court noted that "many of [the *Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940. Expanding on that observation the Court held in *Blum v. Stenson* that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected on the lodestar amount. *Blum v. Stenson,* 465 U.S. 886, 898–99, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 (1984).

More recently the Supreme Court concluded, "[i]n short, the lodestar figure includes most, if not all, of the relevant factors comprising a 'reasonable' attorney's fee...." *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. ——, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986). The court in *Delaware Valley* reasoned

> [a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a "reasonable" fee is wholly consistent with the rationale behind the usual fee-shifting statute.... [T]he aim of such statutes was to enable private parties to obtain help in seeking redress from injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs ... find it possible to engage a lawyer based on the

statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

■ Defendant does not take issue with the lodestar figure requested by plaintiff's counsel. Defendant argues, however, that the lodestar amount should be reduced by the amount of time spent in allegedly duplicative work by plaintiff's co-counsel and in pursuing plaintiff's unsuccessful promotion claim. In light of the above-cited Supreme Court cases, this court believes that the current rule on the determination of statutory attorney's fees requires the district court to calculate the lodestar figure and award that as a "reasonable" attorney's fee. Of course, in calculating the lodestar amount the court must determine the number of hours *reasonably* expended on the litigation as well as a reasonable hourly rate.

Defendant does not contest the hourly rate billed by plaintiff's co-counsel. Defendant contends, however, that plaintiff's co-counsel duplicated each other's work in seven specific instances. The Eleventh Circuit Court of Appeals has held that a reduction in the lodestar figure "is warranted only if the attorneys are *unreasonably* doing the *same* work." *Jones v. Central Soya Co., Inc.,* 748 F.2d 586, 594 (11th Cir.1984) (*quoting Johnson v. University College of the University of Alabama,* 706 F.2d 1205, 1208 (11th Cir.), *cert. denied* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983)) (emphasis in original). The Eleventh Circuit holding that a lodestar figure should be reduced if co-counsel unreasonably perform identical work comports with the requirement that the lodestar amount include only hours reasonably expended in the litigation. Therefore, defendant's request that the lodestar amount be reduced is, in essence, an argument that plaintiff's counsels' lodestar figure is overstated and

---

**2.** The twelve factors identified in *Johnson* were: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the

client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

does not reflect a reasonable expenditure of time on the litigation.

■ Defendant specifically cited seven instances in which plaintiff's co-counsel allegedly performed the same work. Defendant argues that plaintiff's counsels' time sheets show duplicative work in the following areas: (1) research for and drafting of plaintiff's complaint; (2) reviewing and responding to defendant's motion to dismiss; (3) preparing, drafting, reviewing and correcting plaintiff's discovery requests; (4) reviewing and responding to defendant's motion for leave to file and motion for summary judgment; (5) attending and preparing plaintiff for her deposition; (6) preparing plaintiff's trial brief; and (7) researching and responding to defendant's motions for a new trial, motion for j.n.o.v. and motions to supplement the record. The court has carefully reviewed plaintiff's attorneys' time records and finds that the amount of time plaintiff's co-counsel spent on the same matters was not unreasonable.

While the work of plaintiff's attorneys may have overlapped in the above seven areas, the court concludes that the attorneys did not unreasonably perform the same work. In three of the seven instances plaintiff's counsel were researching and responding to defendant's motions. Furthermore, the court finds that plaintiff's co-counsel did not spend an unreasonable number of combined hours on the drafting of plaintiff's complaint and discovery requests. Indeed, in overall hours billed during the course of the litigation, one of defendant's attorneys *alone* billed only 35 hours less than both of plaintiff's attorneys combined. The court also notes that defendant employed two attorneys to represent it in this litigation and that their combined billable hours exceeded those billed by plaintiff's co-counsel. *Cf., Ramos v. Lamm,* 713 F.2d 546, 554 (10th Cir.1983) ("the court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required.") Accordingly, the court finds that the hours of both of plaintiff's attorneys were reasonably expended and that any duplication in the attorneys' work was not unreasonable.

Defendant additionally argues that the lodestar figure should be reduced by the amount of time spent by plaintiff's attorneys in pursuing her unsuccessful promotion claim. In *City of Riverside v. Rivera,* 477 U.S. ——, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), the Supreme Court upheld a district court award of attorney's fees for all hours reasonably expended including those reasonably expended on unsuccessful claims. Citing *Hensley v. Eckerhart, supra,* the Court stated " 'In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories....' Accordingly, '[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee,' and 'the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.' " *Id.,* 106 S.Ct. at 2691–2692.

In *Morgado v. Birmingham-Jefferson County Civil Defense Corps.,* 706 F.2d 1184 (11th Cir.1984), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984) the Eleventh Circuit held that the district court should not have reduced the hours renumerated where the plaintiff had not prevailed on all of her claims. Morgado had asserted claims under 42 U.S.C. § 1983, Title VII and the Equal Pay Act. She prevailed on some of her discrimination claims and her Equal Pay Act claim but did not succeed on her claim alleging discriminatory failure to promote. The Eleventh Circuit found that the district court erroneously "neglected the 'contribution ... made to success by investigation and prosecution of the entire case.' " *Id.* at 1193 (*quoting Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981)). The court further stated that Morgado's attorney was required to explore every aspect of her case and "had to examine all facts of Ms. Morgado's career for discrimination." *Id.* Quoting *Jones v. Diamond, supra,* the court held, "Plaintiffs 'claims were intertwined in that they constituted logical integrated parts of a single action challenging

discrimination....' " *Id.* (*quoting Jones v. Diamond*, 636 F.2d at 1382).

▮ Although in the instant action plaintiff did not succeed on her promotion claim due to a statutory technicality, plaintiff's attorneys achieved an excellent and favorable verdict for plaintiff on each of her other claims. Each claim arose under the ADEA and involved a common core of facts. While plaintiff's promotion claim may have been unsuccessful and arguably meritless, plaintiff's attorneys had a duty to fully investigate all facets of plaintiff's charges of discrimination, "develop all the evidence and present it to the court." *Id.* (*quoting Jones v. Diamond*, 636 F.2d at 1382). As the Supreme Court stated in *Hensley, supra,* "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley v. Eckerhart, supra,* 416 U.S. at 435, 103 S.Ct. at 1940 (citation omitted). In the instant action plaintiff achieved an excellent result on all her claims except the promotion claim. Accordingly, the court will not reduce the fee award on the basis of her failure to succeed on one interrelated claim.

▮ Finally, plaintiff seeks enhancement of the fee award on the grounds, among others, that defendant has substantially delayed paying attorneys' fees and that plaintiff's attorneys took the case on a contingency basis. The lodestar figure may be enhanced only rarely in cases where the attorney achieved "exceptional" results. *See Pennsylvania v. Delaware Valley, supra* 106 S.Ct. at 3098; *Blum, supra* 465 U.S. at 898–901, 104 S.Ct. at 1548–50. In the instant action, although plaintiff prevailed on the majority of her claims, she did not achieve "exceptional" results. Accordingly, the attorney's fee award may not be enhanced on the ground of exceptional success.

▮ The jury returned a verdict in plaintiff's favor on August 23, 1985. To date, plaintiff's attorneys have not been compensated for representing plaintiff. Plaintiff argues, therefore, that the attorney's fee award should be enhanced to reflect delay in payment and inflation. In *Jones v. Central Soya, supra,* the Eleventh Circuit found that a fee award may be adjusted upward "if the hourly rate for attorneys' fees is based on historical rates." 748 F.2d at 593. The court's conclusion suggests that, if a fee award is based on an attorney's current rate, enhancement is unnecessary because the court need not "compensate for inflation and interest." *Id.*[3] In the instant case Attorney Ford calculated his lodestar amount on the basis of both historical and current rates whereas Attorney Klein multiplied his billable hours by his current rate. Rather than enhance the lodestar amount, the court recalculated all of plaintiff's counsels' reasonable hours at their most current hourly rate.

Finally, plaintiff contends the fee award should be adjusted upwards because her attorneys' fees were wholly contingent on success. In *Pennsylvania v. Delaware Valley, supra,* the Supreme Court declined to resolve the "question of upward adjustment, by way of multipliers or enhancement of the lodestar, based on the likelihood of success, or to put it another way, the risk of loss." *Delaware Valley, supra,* 106 S.Ct. at 3100. Instead the issue will be reargued before the Court. 55 U.S.L.W. 3295 (Oct. 15, 1986). As noted above, however, the *Delaware Valley* Court suggested that there is a "strong presumption" that the lodestar amount represents a reasonable fee and that enhancement of the fee award is "proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts."

---

**3.** In *Lattimore v. Oman Construction,* 795 F.2d 930, 933 n. 7 (11th Cir.1986), the Eleventh Circuit concluded that an upward adjustment in the fee award is "not authorized under *Jones* " where the lodestar amount "incorporate[s] counsels' updated current rate rather than the rate they charged at the time of the trial." The Eleventh Circuit, however, has scheduled *Lattimore* to be reheard by the court en banc. Accordingly, the *Lattimore* opinion has been vacated by the court. *See Lattimore v. Oman Construction,* 808 F.2d 757 (11th Cir.1987).

*Pennsylvania v. Delaware Valley, supra,* 106 S.Ct. at 3098 (*quoting Blum v. Stinson, supra,* 465 U.S. at 898–901, 104 S.Ct. at 1548–50).

 In view of the Supreme Court ruling in *Blum,* the Circuit Court for the District of Columbia held on two separate occasions that the contingency nature of the case should provide a basis for fee enhancement *only* in the exceptional case. *See Murray v. Weinberger,* 741 F.2d 1423, 1432 (D.C. Cir.1984); *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 29 (D.C. Cir. 1984). The D.C. Circuit Court's conclusion is bolstered by the Supreme Court's decision in *Delaware Valley.* Although the issue remains unresolved by the Supreme Court, this court believes that enhancement of a fee award based on the risk of loss is *not* warranted except in the exceptional case.[4] This finding comports with the reasoning of the Supreme Court in both *Blum* and *Delaware Valley.*

 As this court has concluded above, although plaintiff achieved an excellent result in this action, her case was not an "exceptional one." Nor was the level of risk in this action unusual or exceptional. Accordingly, the court will not enhance the lodestar amount of plaintiff's attorneys' fees.

## CONCLUSION

The clerk is DIRECTED to amend the judgment in this case to reflect the following:

1) Plaintiff's motion for reconsideration on the issue of reinstatement is DENIED;

2) Plaintiff is entitled to a doubling of the jury verdict ($72,896.00) as liquidated damages;

3) Plaintiff is entitled to back pay at the management level for the period August 23, 1985 through July 23, 1986

and such backpay should be doubled as liquidated damages;

4) Plaintiff is entitled to prejudgment interest on the original back pay award (at 8.18%) for the period through July 23, 1986;

5) Plaintiff is entitled to liquidated damages on her pension payments through July 23, 1986, and is not entitled to liquidated damages on her pension benefits which have accrued since July 23, 1986. Plaintiff should be receiving a monthly payment from July 23, 1986 forward;

6) Plaintiff's attorneys' fees are awarded in the amount of $25,415.00 for Daniel Klein and $60,395.00 for James Ford.

---

**4.** In *Lattimore v. Oman Construction, supra,* the Eleventh Circuit addressed this issue. The court, agreeing with the *Murray* court's holding, found that "an enhancement of attorneys' fees based on the contingency nature of the representation is proper only when the case is an

'exceptional one.'" *Lattimore, supra,* 795 F.2d at 933 (*citing, Murray, supra,* 791 F.2d at 1432). As noted above, however, the *Lattimore* opinion has been vacated pending rehearing of the case en banc.