**John F. KNIGHT, Jr., et al., Plaintiffs and Plaintiffs, Intervenors,**

v.

**The STATE OF ALABAMA, et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**The STATE OF ALABAMA, et al., Defendants.**

**Civ. A. No. CV 83–M–1676.**

United States District Court, N.D. Alabama, S.D.

June 16, 1993.

---

**2.** The Court implicitly addressed such arguments in the discussion of extrinsic evidence *supra.*

Donald V. Watkins, James U. Blacksher, Leslie Proll, Demetrius C. Newton, Birmingham, AL, for plaintiffs.

Robert D. Hunter, Joe R. Whatley, Birmingham, AL, Solomon S. Seay, Thomas W. Thagard, Jr., Montgomery, AL, Edward S. Allen, Birmingham, AL, Walter J. Merrill, Anniston, AL, J. Fedric Ingram, William F. Murray, Carl E. Johnson, Birmingham, AL, C. Glenn Powell, Stanley J. Murphy, Norma Lemley, Tuscaloosa, AL, Ernest N. Blasingame, Florence, AL, Mylan R. Engel, Mobile, AL, and Jeffrey Foshee, Montgomery, AL, for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

### BACKGROUND

This case is over twelve years old. It involves the question of whether vestiges of

discrimination remain in the public higher education system of Alabama. After a six-month nonjury trial, the Court found that certain vestiges of discrimination remain in the system, and ordered the state of Alabama to undertake certain steps to eradicate these vestiges of discrimination. *See Knight v. State of Alabama*, 787 F.Supp. 1030 (N.D.Ala.1991). The case is now before the Court on Plaintiffs' Motion for Attorneys' Fees pursuant to 42 U.S.C. § 1988. Given the length and importance of the case, numerous attorneys have been involved in the case, and tremendous fees have been generated. The Court has already awarded Plaintiffs' attorneys, Mr. Blacksher and Ms. Proll, interim attorney's fees awards of $500,000.00 and $100,000.00 respectively. Plaintiffs now ask the Court to award them over $4,000,-000.00 in attorneys' fees and $130,000.00 in expenses. Plaintiffs argue that their hours expended and rates charged are reasonable. Plaintiffs also ask the Court to enhance their fees based on the novelty and complexity of the issues in the case and the results they obtained. Defendants challenge the reasonableness of the rates charged by many of the attorneys and challenge the reasonableness of the hours expended by some of the attorneys. Defendants also argue that the Court should reduce Plaintiffs' fees based on their lack of success on some of their claims in the litigation.

## STANDARD FOR AWARD OF ATTORNEY'S FEES

### I. *Prevailing Party*

A party can only recover attorney's fees if it is the prevailing party in the litigation. 42 U.S.C.A. § 1988. A plaintiff " 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 503 (1992). *See also Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782,

789, 109 S.Ct. 1486, 1488, 103 L.Ed.2d 866 (1989) (a plaintiff is a prevailing party when he succeeds on "any significant issue in the litigation which achieves some of the benefit [he] sought in bringing the suit").

### II. *Determination of Lodestar*

#### A. Overview

In determining the award of attorney's fees, the Court must "articulate the decision it ma[kes], give principled reasons for those decisions, and show its calculations." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). To determine the amount of attorney's fees to award, the Court must determine the number of hours reasonably expended in preparing and litigating the case and then multiply those hours by a reasonable billable rate. *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Norman*, 836 F.2d at 1298–1302. That sum constitutes the "lodestar" amount. *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1985). The burden of proof for establishing the lodestar amount is on the party seeking the award. "The party seeking an award of fees should submit evidence supporting hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Where the record before the Court is inadequate, the Court may utilize its own experience and judgment to make the award. *Norman*, 836 F.2d at 1303.

#### B. Reasonable Hourly Rate

A rate is reasonable if it is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." [1] *Blum v. Stenson*, 465 U.S. at 895–96 n. 11, 104 S.Ct. at 1547 n. 11; *Norman*, 836 F.2d at 1299. The applicant bears the burden of proving the reasonableness of a rate. *Blum*, 465 U.S. at 895–96 n. 11, 104

1. The relevant legal community is the area in which the court sits, which in this case is the Northern District of Alabama. *See Turner v. Secretary of Air Force*, 944 F.2d 804, 808 (11th Cir.1991); *Norman*, 836 F.2d at 1305; 2 M. Schwartz & J. Kirklin, Section 1983 Litigation: Claims Defenses, and Fees § 21.3 (1991).

S.Ct. at 1547 n. 11; *Norman,* 836 F.2d at 1299.

■ The reasonableness of a rate may be established by evidence of rates charged in similar circumstances and by opinion evidence. *Norman,* 836 F.2d at 1299. The similarity of circumstances, including the type of case and client, generally indicate a range of reasonable rates, which is accounted for by the varying skill, reputation, and experience of attorneys. *Id.* at 1300.

■ The regular hourly billing rate of an attorney provides the best starting point for determining a reasonable fee. *See McDonald v. Armontrout,* 860 F.2d 1456, 1458–59 (8th Cir.1988); *Tomazzoli v. Sheedy,* 804 F.2d 93, 98–99 (7th Cir.1986).[2] Courts, however, must look beyond what an attorney may have billed on isolated occasions, because attorneys engaged in civil rights litigation rarely bill on an hourly basis. *See Norman,* 836 F.2d at 1300. Instead, courts must also look to other types of cases involving similar complexity and skill. *Id.* Thus, to determine the appropriate rate for each attorney, the Court must look to the most recent hourly rate each attorney charged, the hourly rates charged by attorneys with similar experience, and the experience, skill, and reputation of each attorney.

### C. Reasonable Hours Expended

■ In determining the number of hours reasonably expended, courts must consider whether the work sought to be compensated was " 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Delaware Valley,* 478 U.S. at 561, 106 S.Ct. at 3096 (citations omitted). *See also Gray v. Romero,* 709 F.Supp. 325, 325–327 (D.R.I.1989) (Courts must look to whether the work is sufficiently closely related to the litigation). Moreover, courts must exclude from this initial fee calculation hours that were "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S.

at 434, 103 S.Ct. at 1939–40; *Norman,* 836 F.2d at 1301. Where the documentation of hours is inadequate, the district court has the discretion to reduce the award accordingly. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939.

### D. Adjustment of Lodestar

■ After determining the number of reasonable hours expended, a district court must still address other considerations which may lead it to adjust the award upward or downward in order to provide a fair and reasonable award. *Blum,* 465 U.S. at 901, 104 S.Ct. at 1550; *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. The burden is on the applicant to prove that an adjustment is necessary to obtain a fair and reasonable award. *Blum,* 465 U.S. at 898, 104 S.Ct. at 1548.

#### 1. *Enhancement for Contingency*

The Supreme Court has made clear in *City of Burlington v. Dague,* that "no contingency enhancement whatever is compatible with the fee-shifting statutes." *City of Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). *See also McKenzie v. Cooper, Levins & Pastko, Inc.,* 990 F.2d 1183, 1186 (11th Cir.1993) (enhancement for contingency no longer available in light of *City of Burlington*).

#### 2. *Extent of Plaintiffs' Success*

■ The extent of a plaintiff's success in the litigation is a crucial factor in determining whether to adjust the lodestar amount in either direction. *See Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 789, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989); *Riverside v. Rivera,* 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed.2d 466 (1985); *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943. A district court must focus on the significance of the overall relief a plaintiff obtains in relation to the relief a plaintiff sought and the hours plaintiff's counsel reasonably expended on the litigation.

---

**2.** The Eleventh Circuit has not explicitly addressed this question. The closest it has come to ruling on the issue is when it held that a trial court did not abuse its discretion in awarding an hourly rate below what an attorney testified he normally charged. *See Mayson v. Pierce,* 806

F.2d 1556 (11th Cir.1987). However, Clark, J., dissenting in *Mayson,* stated that "[t]he starting point in assessing reasonable fees when the successful litigant is represented by private counsel is his regular hourly billing rate...." *Id.* at 1563.

*Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940; *Norman,* 836 F.2d at 1306.

■■■■ Where a plaintiff's claims are based on different facts and legal theories, and a plaintiff has only prevailed on some of those claims, a district court should exclude the hours spent on the unsuccessful claims in determining the amount of a reasonable fee. *Garland,* 489 U.S. at 789, 109 S.Ct. at 1492; *Hensley,* 461 U.S. at 435–36, 440, 103 S.Ct. at 1940–41, 1943. However, where a plaintiff's claims arise out of a common core of facts and involve related legal theories, a district court must look to the results obtained to determine the amount of a reasonable fee. *Garland,* 489 U.S. at 789, 109 S.Ct. at 1492. If a plaintiff does not prevail on all claims, but overall obtains "excellent results," a district court must include all hours spent on all claims. *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. On the other hand, if a plaintiff does not prevail on all claims, and overall obtains "only partial or limited success," a district court must reduce the award of attorney's fees. *Id.* at 436, 103 S.Ct. at 1941.

■■■■ Furthermore, the degree of success a plaintiff obtains "is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions." *Id.* at 436, 103 S.Ct. at 1941. A plaintiff may identify some unlawful practices or conditions, but because the "range of possible success is vast," merely prevailing on some claims "may say little about whether [the hours expended by plaintiff's counsel were] reasonable in relation to the success achieved." *Id.*

### 3. *Johnson Factors*

■■■■ In adjusting an award, a district court may also consider other factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[3] *See Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. However, the Supreme Court has made clear that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." [4] *Delaware Valley,* 478 U.S. at 566, 106 S.Ct. at 3098. In sum, there is a strong presumption that the lodestar amount represents the reasonable fee award. *Delaware Valley,* 478 U.S. 546, 565–66, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1985). The lodestar amount should only be adjusted upward in "certain 'rare' and 'exceptional' cases, supported by both 'specific evidence on the record' and detailed findings made by the lower courts." *Id.* at 565, 106 S.Ct. at 3098.

### 4. *Delay in Payment—Time Value of Money*

■■■■ The Supreme Court has made clear that "[a]n adjustment for delay in payment is ... an appropriate factor in the determination of what constitutes a reasonable attorney's fee under section 1988." *Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). However, the Supreme Court has not mandated a particular method district courts must use to account for a delay in payment. The Eleventh Circuit, though, has specifically stated that "[i]n this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current

**3.** The twelve factors listed in *Johnson* are as follows: (1) the time and labor required, (2) the novelty and difficulty of the legal questions, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Johnson,* 488 F.2d at 717–718.

**4.** In *Blum v. Stenson,* the Supreme Court found that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" in the litigation are presumably reflected in the lodestar amount. *Blum,* 465 U.S. at 898–900, 104 S.Ct. at 1549. Moreover, in *City of Burlington,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449, the Court found that the contingency of a fee is also reflected in the lodestar amount.

rates rather than at historic rates." [5] *Norman*, 836 F.2d at 1302.

Moreover, Plaintiffs have not cited to any district court decisions in this Circuit since *Norman* that have used historical rates to account for a delay in payment. Instead, district courts have universally used current rates to account for a delay in payment. *See Ross v. Buckeye Cellulose*, 764 F.Supp. 1543, 1552 (M.D.Ga.1991) (applying *Norman* to six-year delay in payment), *rev'd on other grounds*, 980 F.2d 648, 662 (11th Cir.1993); *Parker v. Burnley*, 703 F.Supp. 925, 928 (N.D.Ga.1988) (court will apply "the *Norman* rule" in cases that "spanned award increases in the market rate for attorney's fees"); *Searcey v. Crim*, 692 F.Supp. 1363, 1367 (N.D.Ga.1988) (rejecting plaintiffs requested ten percent enhancement for delay in favor of an award at current rates in accordance with *Norman* ). Furthermore, the vast majority of other circuits also use current rates to account for a delay in payment. *See* 2 M. Schwartz & J. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees § 21.17 at 266–68 (1991) (jurisdictional survey indicates that a significant majority of courts use current rates to compensate for delay in payment as opposed to historical rates plus interest).

### E. Apportionment of Attorney's Fees

The issue of apportionment of fees is an unsettled area of the law. Very few courts have addressed the issue, and the Eleventh Circuit has addressed the issue only once. In *Council for Periodical Distributors Ass'ns v. Evans*, 827 F.2d 1483, 1487–88 (11th Cir. 1987), the Eleventh Circuit remarked that district courts have wide discretion over whether to apportion fees. *Id.* The *Evans* court stated that where two or more defendants actively participate in a constitutional violation, it may be appropriate to hold all defendants jointly and severally liable for attorney's fees. *Id.* The court further stat-ed, however, that where multiple defendants participate in varying degrees in a constitutional violation, it may be appropriate to apportion fees. *Id.*

In *Evans*, the Eleventh Circuit also remarked that district courts have wide discretion on how to divide liability for fees. The *Evans* court stated that a court can divide the fees: (1) equally among defendants, *see Dunten v. Kibler*, 518 F.Supp. 1146, 1159 (N.D.Ga.1981); (2) according to the relative culpability of the various defendants, *see Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir. 1982); or, (3) according to the time spent by the plaintiff in preparing the case against each defendant, *see Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125–26 (9th Cir.1981).

Which method to adopt depends upon a variety of factors, but ultimately depends on the cause of the injury. *See Evans*, 827 F.2d at 1487–88; *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 960 (1st Cir.1984). If the culpability of the defendants is equal, the court should divide the fees equally; however, if the culpability of the defendants varies significantly, the court should divide the fees according to the relative culpability of the defendants. *Id.*

The *Evans* court also recognized, however, that the methods of apportionment "only lead to approximations of the 'best' division of fees, and that certain methods may be inappropriate in some cases because of the difficulty in calculating even a good approximation." *Id.* Therefore, the *Evans* court instructed district courts "to achieve the most fair and sensible solution ... consistent with both efficiency and fairness." *Id.*

### APPLICATION OF THE LAW

#### I. *Prevailing Party*

None of the named Defendants in the Knight–Sims Plaintiffs' Complaint argue that

---

5. Courts use various methods to adjust for a delay in payment. Some courts use historical rates adjusted by a certain interest rate, while other courts use current rates. In using historical rates, courts apply the rate an attorney charged at a certain time to the hours an attorney expended during the time the attorney charged that rate, and then adjust that rate by a certain interest rate. In using current rates, courts apply current rates charged by an attorney to all hours expended by an attorney during the case. *See generally* 2 M. Schwartz & J. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees § 21.17 (1991).

Plaintiffs are not prevailing parties. The Court held in the Remedial Decree that "the Knight and Sims Plaintiffs are prevailing parties for purposes of attorneys' fees and expenses with respect to all issues and all stages of this litigation including the parallel action in *Knight v. James.*" *Knight v. State of Alabama,* 787 F.Supp. 1030, 1382 (N.D.Ala.1991). Moreover, the Court stated in its July 29, 1992 Order that even after Plaintiffs' appeal, "it is clear under the United States Supreme Court's opinion in *United States v. Fordice,* —— U.S. ——, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992), the plaintiffs are and will be prevailing parties." *See* Order at 2.

## II. *Determination of Lodestar*

### A. Reasonable Rates

The parties have presented extensive evidence concerning the proper rates for the attorneys involved in this case. To determine the proper rate, the Court will discuss the rate for each attorney in turn, looking to the most recent hourly rate each attorney charged, the hourly rates charged by attorneys with similar experience[6], and the experience, skill, and reputation of each attorney. *See Blum,* 465 U.S. at 895–896 n. 11, 104 S.Ct. at 1547 n. 11; *Norman,* 836 F.2d at 1299.

#### *James Blacksher*

█ The Court finds that Mr. Blacksher's most recent hourly rate is between $150.00 and $175.00. While certain courts have awarded Mr. Blacksher a higher effective rate, the most recent rate Mr. Blacksher has actually charged a fee-paying client is only $150.00 per hour in 1988. TRANSCRIPT OF APRIL 26, 1993 ATTORNEYS' FEES HEARING ("TR") 131. Moreover, in eight recent fee petitions for work done in federal civil cases in Alabama, Mr. Blacksher has stated that he charges an hourly rate of between $150.00

and $175.00 per hour for federal civil litigation. AU EXHIBITS 2–9.

As to rates charged by attorneys with similar experience, the Court notes it must distinguish among rates charged to different types of clients and cases. For example, both Plaintiffs' expert, Mr. Robert Weil, and Defendants' expert, Mr. Fournier Gale, agreed that hourly rates for regular clients that generate a volume of work in an area of practice where there are a number of attorneys to provide those services, tend to be lower, while hourly rates for non-regular clients that do not generate a volume of work in an area where there are only a few attorneys to provide those services, tend to be higher. TR 34, 37–38 (WEIL); TR 369–374 (GALE). Mr. Gale also testified that attorney's performing complicated work, like securities and antitrust work, charge higher rates because generally the work is uniquely complex and only a small number of lawyers are capable of performing that type of work. TR 370–373.

The Court finds that the type of work performed by Plaintiffs' attorneys in this case is more analogous to work for non-regular clients in an area where only a few attorneys provide those services. This case involved the relatively new and unchartered area of civil rights law—the desegregation of higher education. The uniqueness and complexity of this area of the law is certainly comparable to antitrust and securities law. *See Norman,* 836 F.2d at 1300.

Given that, the Court finds that the general range of market rates for attorneys with 15 years of experience practicing federal complex litigation in Birmingham is from approximately $150.00 to $300.00 per hour, with the great majority of rates from $150.00 to $225.00 per hour. All three of Defendants experts, Fournier Gale, Chris Mitchell, and Bill Gardner,[7] testified that in their opinions the correct range of rates for attorneys in-

---

6. The Court notes that, except for Ms. Proll and Ms. Cochran, all of Plaintiffs' attorneys' have practiced civil rights law for over 15 years, and, therefore, the same range of rates applies to all of them.

7. All three are Birmingham attorneys engaged in federal civil litigation, ranging from commercial

to environmental to labor, with at least twenty (20) years of experience. Mr. Gayle also informally surveyed eight (8) attorneys familiar with market rates in Birmingham for experienced attorneys engaged in complex federal litigation. TR 363–366 (GAYLE); TR 384–385 (MITCHELL); AU EXHIBIT 18 AT 7–11, 15 (GARDNER).

volved in such work is from $150.00 to $200.00 per hour. *See* TR 369–370 (GAYLE); TR 386–387 (MITCHELL); AU EXHIBIT 18 AT 14–17, 25–26 (GARDNER). However, Mr. Gayle testified that he personally charged a top rate of $225.00, primarily for environmental cases, and that some members of his firm charged a top rate of $250.00 per hour. TR 369–370, 374. Moreover, Plaintiffs' expert, Mr. Weil, testified that at least two attorneys in Birmingham involved in highly complex federal litigation charge hourly rates from $250.00 to $300.00 per hour.[8] TR 52–53.

Within that range, the Court finds that Mr. Blacksher's time in this case is properly compensable at a rate of $275.00 per hour based on his experience and his skill in prosecuting this case. Mr. Blacksher has practiced law since 1971, and throughout that time has worked almost exclusively on civil rights cases. PLAINTIFFS EXHIBIT 1, BLACKSHER AFFIDAVIT. During that time he has successfully served as lead counsel on a number of significant employment discrimination, desegregation, and voting rights cases. *Id.* He has an excellent reputation in the civil rights community throughout the country. PLAINTIFFS EXHIBIT 10, NORMAN CHACHKIN DEP., PP. 23–25. His scholarly writings have also been cited with approval by the United States Supreme Court. PLAINTIFFS EXHIBIT 1, BLACKSHER AFFIDAVIT.

Moreover, he exhibited significant skill in his prosecution of this case as lead counsel. This case involved a unique, complex, and unchartered area of civil rights law, and Mr. Blacksher's presentation "was much more thorough and deeper than anything that had been attempted before." PLAINTIFFS EXHIBIT 10, NORMAN CHACHKIN DEP., PP. 108–109.

Finally, the Court will compensate Mr. Blacksher at a lower hourly rate for post-judgment work. The Court notes that Mr. Blacksher agrees that a lower hourly rate for post-judgment work is appropriate. TR 173. For post-judgment work, the Court will compensate Mr. Blacksher at an hourly rate of $200 per hour.

*Donald Watkins*

■ Within the range of $150.00 to $300.00 per hour for attorneys with similar experience, the Court finds that Mr. Watkins time in this case is properly billable at a rate of $200.00 per hour. The Court notes that Mr. Watkins has charged a rate of $175.00 per hour approximately eighty to ninety percent of his time over the last two years. *See* TR 286–287; AU EXHIBIT 14, P. 7. The Court will compensate Mr. Watkins at a higher rate, however, because of his experience and role in this case. Mr. Watkins has practiced law since 1973 and has devoted a majority of his practice to civil rights cases. PLAINTIFFS' EXHIBIT 1, WATKINS AFFIDAVIT. Moreover, Mr. Watkins served as lead counsel in the first trial of this case.

*Demetrius Newton*

■ The Court finds that before he left private practice in 1991, Mr. Newton regularly charged a rate of $125.00 per hour, and a highest rate of $225.00 per hour. *See* AU EXHIBIT 13, NEWTON DEP., PP. 45–46; TR 202, 229–230. Within that range, the Court finds that Mr. Newton's time in this case is properly compensable at a rate of $175.00 per hour. Mr. Newton has practiced law since 1953 and has devoted over half of his practice to civil rights cases. PLAINTIFFS EXHIBIT 1, NEWTON AFFIDAVIT. Mr. Newton, however, played a lesser role in this case than did Mr. Blacksher. Mr. Newton played only a limited role in discovery, preparation of pleadings, and at trial. TR 261–264; 140–141. His role was mostly as a "liaison with the A & M Community." TR 140.

*Gregory Stein*

■ Within the range of $150.00 to $300.00 per hour for attorneys with similar experience, the Court finds that Mr. Stein's time in this case is properly compensable at a rate of $200.00 per hour. The Court notes

---

8. The Court rejects Defendants' contention that these rates are not relevant because Mr. Weil admitted that "theses are not Birmingham cases, [but] are cases where they're called upon for special expertise and they may travel out of town." TR 52. The Court finds the rates relevant to show rates for attorney's in Birmingham who have a very special expertise in a complex area of the law.

that based on Mr. Stein's most recent fee requests in federal civil cases in Alabama, Mr. Stein most recently charged approximately $150.00 per hour in federal civil cases. *See* AU EXHIBIT 16. The Court will compensate Mr. Stein at a higher rate, however, because Mr. Stein has practiced civil rights law extensively since he was admitted to practice in 1975, and is currently lead counsel in the Mobile desegregation case. *See* PLAINTIFF EXHIBIT 1, STEIN AFFIDAVIT.

### Larry Menefee

■ Within the range of $150.00 to $300.00 per hour for attorneys with similar experience, the Court finds that Mr. Menefee's time in this case is also properly compensable at a rate of $200.00 per hour. The Court notes that Mr. Menefee most recently charged approximately $150.00 per hour in federal civil cases. *See* AU EXHIBIT 16. The court will compensate Mr. Menefee at a higher rate, however, because Mr. Menefee has practiced civil rights law extensively since he was admitted to practice in 1971, served as co-counsel with Mr. Blacksher in Mobile, Alabama and Pensacola, Florida voting rights cases, and co-authored with Mr. Blacksher a Hastings Law Journal article cited with approval by the United States Supreme Court. *See* PLAINTIFFS EXHIBIT 1, MENEFEE AFFIDAVIT.

### Leslie Proll

■ The Court finds that based on Ms. Proll's recent fee requests in federal civil cases in Alabama, she most recently charged $125.00 per hour in federal civil cases. *See* AU EXHIBITS 10–12. Furthermore, the Court finds that the range of market rates for attorneys with similar experience is from $100.00 to $150.00 per hour. Plaintiffs offered no evidence of the market rates for associates in Birmingham.[9] Defendants, however, offered the testimony of Mr. Gardner that associates at his firm in 1993 charged an hourly rate of $100.00. Defendants also introduced evidence that the rates

in the largest firms in Birmingham for associates vary from $70.00–$150.00. *See* UNIVERSITY OF ALABAMA EXHIBIT 2. Within that range, the Court finds that a rate of $140.00 per hour properly compensates Ms. Proll's for her time in this case. Ms. Proll was admitted to practice in 1987, and is currently an associate in Mr. Blacksher's firm. *See* PLAINTIFF EXHIBIT 1, PROLL AFFIDAVIT. There she has almost exclusively practiced civil rights law. Moreover, the Court finds that Ms. Proll exhibited significant skill in assisting Mr. Blacksher in the prosecution of the case. Finally, for Ms. Proll's post-judgment work, the Court will compensate her at a rate of $100 per hour.

### Wanda Cochran

Within the range of $100.00 to $150.00 per hour for attorneys with similar experience, the Court finds the rate of $140.00 per hour properly compensates Ms. Cochran for her time in this case. The Court notes that Ms. Cochran most recently charged $110.00 per hour in federal civil cases. *See* AU EXHIBIT 16. The Court will compensate Ms. Cochran at a higher rate, however, based on her role in this case. Ms. Cochran was admitted to practice in 1984, and during the time she worked on this case she was an associate in the firm of Blacksher, Menefee, and Stein, P.A., and worked almost entirely on civil rights cases. *See* PLAINTIFFS EXHIBIT 1, COCHRAN AFFIDAVIT.

### B. Hours

#### 1. Compensation for Certain Activities

Defendants do not challenge the reasonableness of most of the hours expended by Plaintiffs' attorneys. However, they do challenge the compensability for time spent on the following activities: (1) talking with the media; (2) civil rights conferences; (3) meetings with lawyers in similar cases; (4) legislative activities; (5) Plaintiffs' unsuccessful attempt to file an *amicus* brief in *Fordice;* and (6) Plaintiffs' unsuccessful Munchus in-

---

9. Plaintiffs did present Mr. Weil's testimony as to the average rates for associates in the southeastern region of the United States. However, the Court does not find that testimony persuasive because Mr. Weil based the rates on the average rates for the entire southeast, not the Northern District of Alabama. *See Turner,* 944 F.2d at 808; *Norman,* 836 F.2d at 1299 (the relevant legal community is the area in which the court sits).

tervention petition.[10] Plaintiffs argue that all of these activities are compensable.

As to these activities, work which was useful, necessary, and related to the litigation is compensable. *See Delaware Valley,* 478 U.S. at 561, 106 S.Ct. at 3096; *Gray v. Romero,* 709 F.Supp. 325, 327 (D.R.I.1989). The Court will discuss Defendants' objections in turn.

■ First, the Court finds that time spent talking with the media is not compensable because it is not " 'ordinarily necessary' to secure the final result obtained from the litigation." *Delaware Valley,* 478 U.S. at 561, 106 S.Ct. at 3096. *See also Romero,* 709 F.Supp. at 327; *Ramos v. Lamm,* 632 F.Supp. 376, 384 (D.Colo.1986) (time spent talking with the media is not compensable). *But see Davis v. City and County of San Francisco,* 976 F.2d 1536, 1545 (9th Cir.1992) (time spent talking to press is compensable if it is "directly and intimately related to the successful representation of a client").[11]

■ Second, the Court finds that the time spent at civil rights conferences, such as the NAACP's Airlie House Conference on October 8–9, 1992 and the Southern Education Foundation Conference on January 10–11, 1993 are not compensable. TR 164–168. The Court does not find that these conferences are sufficiently related to this litigation to be compensable. While these conferences are obviously valuable to Plaintiffs' counsel, they are not sufficiently related to this litigation to require Defendants to pay for them. The Court does find, however, that the time spent by Plaintiffs' attorneys at a moot court presentation in *Fordice* at Howard University Law School compensable because of the importance of *Fordice* to the Plaintiffs.

■ Third, the Court finds that the time spent meeting with lawyers in similar cases is compensable. Given the significance and uniqueness of the case, the Court finds that

meeting with lawyers in similar cases to develop strategy is sufficiently related to this litigation and sufficiently useful to be compensable. *See Baeder v. Secretary of Health & Human Services,* 634 F.Supp. 1041, 1047 (D.N.J.1986) (time spent consulting with other attorneys compensable). *But see Romero,* 709 F.Supp. at 327 (time spent with lawyers who had handled similar cases not compensable).

■ Fourth, the Court finds that Plaintiffs' attorneys' post-judgment lobbying of the Alabama Legislature is compensable. The Court finds that those efforts were sufficiently related to a settlement of the litigation to be compensable. *See* TR 166–175; *Davis,* 976 F.2d at 1545 (time spent lobbying third parties is compensable if it is "directly and intimately related to the successful representation of a client").

■ Fifth, the Court finds that Plaintiffs' attempt to file an *amicus* brief in *Fordice* is compensable. *See Coleman v. Block,* 589 F.Supp. 1411, 1419 (D.N.D.1984) (filing an *amicus* brief in a case crucial to plaintiff's success is compensable). The Supreme Court's holding in *Fordice* was crucial to Plaintiffs' success in this case, and the Court will not punish Plaintiffs for their ultimate lack of success.

■ Sixth, and finally, the Court finds that time spent on Plaintiffs' unsuccessful Munchus intervention petition is compensable. Efforts to monitor compliance with a judgment cannot be severed from matters upon which Plaintiffs prevailed. *See Turner v. Orr,* 785 F.2d 1498, 1503 (11th Cir.1986). Even if unsuccessful, postjudgment work which is related to the enforcement of an injunction and contributes to the vindication of rights is compensable. *Orr,* 785 F.2d at 1504; *Miller v. Carson,* 628 F.2d 346, 348 (5th Cir.1980). Here, Plaintiffs' Petition to Intervene, which also asked the Court to enjoin the University of Alabama at Birming-

10. Defendants also challenged the compensability of Plaintiffs' counsel's time spent on the appeal. Plaintiffs, however, withdrew their request for 178.3 hours of Mr. Blacksher's time, and 95.2 hours to Ms. Proll's time. *See* PLAINTIFFS' POST-HEARING BRIEF, P. 20; TR 145.

11. Even assuming that time spent talking to the media should be compensable, the Court does not find that the time spent here taking to the media was "directly and intimately related to the successful representation of a client" *Davis,* 976 F.2d at 1545.

ham's presidential selection process, was related to the Court's Remedial Decree, and "had the effect of maintaining compliance with the Court's [Remedial Decree]." *Id.*

### 2. Compensable Hours for Attorneys

Having discussed the types of challenged hours which are compensable, the Court will now discuss the number of hours reasonably expended by each of Plaintiffs' attorneys. Initially, the Court notes that Defendants do not challenge the hours of Mr. Watkins, Mr. Menefee, Mr. Stein, and Ms. Cochran. Therefore, the Court will compensate Mr. Watkins for 1,025.80 hours,[12] Mr. Stein for 217.60 hours,[13] Mr. Menefee for 277.30 hours,[14] and Ms. Cochran for 444.80 hours.[15] The Court also notes that Defendants do not challenge Mr. Watkins' and Mr. Menefee's requests for expenses. Therefore, the Court awards Mr. Watkins $1,578.04,[16] and Mr. Menefee $400.00,[17] for their expenses incurred in this case. Defendants, however, do object to the hours of Mr. Blacksher, Ms. Proll, and Mr. Newton. The court will discuss the hours of each in turn.

### James Blacksher

Mr. Blacksher requests the Court to compensate him for a total of 5,414.40 hours.[18]

However, because the Court has differentiated hourly rates for pre-judgment work and post-judgment work, the Court must divide Mr. Blacksher's hours between the two. The Court finds that of the hours for which Mr. Blacksher requests the Court to compensate him, 5,029.60 hours are for pre-judgment work and 348.8 hours are for post-judgment work.

From those hours the Court deducts time spent on activities which the Court has found is not compensable.[19] From Mr. Blacksher's pre-judgment work, the Court deducts 3.50 hours for time spent talking with the press.[20] From Mr. Blacksher's post-judgment work, the Court deducts 3.20 hours.[21] From Mr. Blacksher's post-judgment work, the Court also deducts 13.00 hours for time spent at conferences.[22] Thus, the Court will compensate Mr. Blacksher for 5,026.10 pre-judgment hours and 333.60 post-judgment hours.

Mr. Blacksher also asks the Court to compensate him for expenses totalling $132,-514.20.[23] Defendants do not object. Therefore, for his expenses incurred in this litigation, the Court awards Mr. Blacksher $132,-514.20.

12. This amount reflects the total number of hours Mr. Watkins has requested in his first and second fee petitions (999.80 hours) and in the April 27, 1993 attorney's fees hearing (26.00 hours) (TR 294–295).

13. This amount reflects the total number of hours Mr. Stein has requested in his first fee petition (181.00), second fee petition (16.60 hours), and in the April 27, 1993 attorney's fees hearing (20.00 hours) (TR 350).

14. This amount reflects the total number of hours Mr. Menefee has requested in his first fee petition (43.70 hours), second fee petition (169.50 hours), and in the April 27, 1993 attorney's fees hearing (64.10 hours) (TR 358).

15. This amount reflects the total number of hours Ms. Cochran requested in her first and only fee petition (444.80 hours).

16. Mr. Watkins asked for $1,440.04 in Plaintiffs' First Petition for Fees and for $138.00 in the April 27, 1993 attorneys' fee hearing (TR 295).

17. Mr. Menefee asked for $400.00 in Plaintiffs' Second Petition.

18. This amount reflects the total number of hours Mr. Blacksher has requested in his first fee

petition (5,047.60 hours) and second fee petitions (545.10 hours), minus time spent on the appeal which he withdrew in his post-hearing motion (178.30 hours).

19. Much of the time the Court deducts is only an approximation because many of the attorneys' entries contain multiple activities for a single time entry.

20. That time is as follows: 1.00 hour on April 15, 1991, 1.5 hours on October 29, 1991, and 1.00 hour on November 5, 1991.

21. That time is as follows: .30 hours on January 2, 1992, .70 hours on January 6, 1992, .50 hours on February 29, 1992, .50 hours on April 4, 1992, .30 hours on April 20, 1992, .50 hours on July 22, 1992, and .40 hours on March 23, 1993.

22. That time is as follows: 5.00 hours on January 10, 1993 and 8.00 hours on January 11, 1993. .

23. Mr. Blacksher asked for $108,102.44 in Plaintiffs' First Fee Petition, $15,343.26 in Plaintiffs' Second Petition, and $9,068.50 in Plaintiffs' Third Petition.

*Leslie Proll*

Ms. Proll requests the Court to compensate her for 2,611.40 hours.[24] However, because the Court has differentiated hourly rates for pre-judgment work and post-judgment work, the Court must divide Ms. Proll's hours between the two. The Court finds that of the hours for which Ms. Proll requests the Court to compensate her, 2,386.50 hours are for pre-judgment work and 224.90 hours are for post-judgment work.

From that the Court deducts time spent on activities which the Court has found is not compensable. From Ms. Proll's pre-judgment time, the Court deducts no hours for non-compensable time. From Ms. Proll's post-judgment time spent talking with the press, the Court deducts 2.80 hours.[25] For post-judgment time spent at conferences the Court deducts 6.50 hours.[26] Thus, the Court will compensate Ms. Proll for 2,386.50 pre-judgment hours and 215.60 post-judgment hours.

*Demetrius Newton*

Mr. Newton requests the Court to compensate him for a total of 2,198.60 hours.[27] Defendants, however, challenge the reliability of Mr. Newton's fee records and the reasonableness of his hours. Defendants also argue that the Court should only compensate Mr. Newton for the hours he billed while counsel of record for a party in the case. Plaintiffs claim that Mr. Newton's time records are accurate and that his hours are reasonable.

■ The Court finds that only the hours Mr. Newton billed while he was counsel of record for a party in this case are compensable. Section 1988 unambiguously states that "the court, in its discretion, may allow the prevailing *party* . . . a reasonable attorney's

fee as part of the costs." 42 U.S.C. § 1988. Section 1988 only allows actual parties who prevail in a litigation to recover attorney's fees. *See Morales v. Turman,* 820 F.2d 728, 732 (5th Cir.1987) (while intervenors may qualify for court-ordered fees, non-intervenors, even those granted *amicus curiae* status, are not parties, and are not entitled to attorney's fees under section 1988). *See also Wilder v. Bernstein,* 965 F.2d 1196, 1203–1204 (2nd Cir.1992), *cert. denied* — U.S. ——, 113 S.Ct. 410, 121 L.Ed.2d 335 (only intervenor may qualify for court-ordered fees).

Here, Mr. Newton did not represent a party in this case until May 13, 1988, when he entered an appearance for the expanded Knight class through the filing of an amended complaint. He had been connected with the case since 1984 through his relationship with AAMU Legal Defense Fund and the National Alumnae Normalite Association. Neither of these organizations nor individuals heading them, however, were ever allowed to intervene in this case, and thus were never parties. *See* TR 212–213, 257–260; AU Exhibit 13, pp. 10–13. For that time the Court deducts 828.6 hours.[28]

■ As to Mr. Newton's remaining hours, the Court finds them excessive. A comparison of various documents in the court record with the time Mr. Newton billed for working on those documents reveals the excessiveness of his claimed hours. Many times Mr. Newton billed one, or two hours to review simple one page documents. For example, Mr. Newton verified that it took him one hour on May 14, 1990 to review a single paragraph-long notice of appearance by his co-counsel, Leslie Proll filed May 10, 1990. Plaintiffs Exhibit, p. 21; AU Exhibit 13, at

24. This amount reflects the total number of hours Ms. Proll has requested in her first fee petition (2,386.50 hours), and second fee petition (320.10 hours), minus time spent on the appeal (95.20 hours), which she withdrew in Plaintiffs' post-hearing brief.

25. That time is as follows: .30 hours on February 2, 1992 and 2.50 hours on February 25, 1992.

26. That time is as follows: 3.00 hours on October 8, 1992 and 3.50 hours on October 9, 1992.

27. This amount reflects the total number of hours Mr. Newton has requested in his first fee petition (2,449.60 hours), second fee petition (20.00 hours), and in Plaintiffs' Exhibit 12 (22.00 hours), minus time Mr. Newton acknowledged was duplicative (293.00 hours) in the April 27, 1993 attorney's fee hearing (TR 232–236).

28. That time reflects all hours billed by Mr. Newton prior to May 1988 according to his time records. *See* Plaintiffs Exhibit 11.

p. 59. Likewise, on April 5, 1990, Mr. Newton billed one hour to review Mr. George's one page notice of appearance filed on April 2, 1990. PLAINTIFFS EXHIBIT 11, P. 20. On May 7, 1990, Mr. Newton also billed one hour to review Mr. Munchus' one paragraph notice of appeal filed on May 4, 1990. AU EXHIBIT 13, PP. 59–60. On October 25 and 27, 1988, Mr. Newton billed a total of four and a half hours to review two one sentence briefs by Montevallo and the University of South Alabama, stating they knew of no facts why Judge Propst should recuse himself. PLAINTIFFS EXHIBIT 11, P. 13. Furthermore, on July 14, 1989, Mr. Newton billed two hours for reviewing a two-sentence motion filed by the University of Alabama on July 17, 1989, requesting assistance from the court for establishing a discovery schedule. PLAINTIFF EXHIBIT 11, P. 18.[29]

Moreover, there are certain indications of unreliability in regard to Mr. Newton's time records. First, there are uncertainties as to why and how Mr. Newton created two different documents summarizing his time spent on the case, the first filed on April 8, 1992, and the second given to the Defendants on November 10, 1992. As to why Mr. Newton created two documents, it is noteworthy that while Mr. Newton stated in his deposition that there was little difference between the two documents, in fact, Mr. Newton claimed 608 additional hours in the second document. AU EXHIBIT 13, PP. 37–38.

As to how, Mr. Newton created the two documents, various questions exist. Mr. Newton states that he prepared the first document from contemporaneous notes at the request of Ms. Proll, and prepared the second document after Defendants asked for additional information. AU EXHIBIT, PP. 26–27. He states that when he prepared the second document he had found additional documents, including his record book, which he states was lost from December 1991 until sometime after April 1992 when he created

the first document. AU EXHIBIT 13, PP. 26–28. Mr. Newton's record book, however, contains entries from December 1991 through July 1992, time during which he states the book was lost. The two documents also contain numerous identical typographical errors. See POST-HEARING BRIEF OF THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA REGARDING ATTORNEYS' FEES, APPENDIX 5. This suggests that contrary to Mr. Newton's testimony, he did have access to his record book when he prepared the first document summarizing his time, raising questions as to the reliability of those documents.

Moreover, it appears from the bills submitted by Mr. Newton and his testimony, that he may not have created either document from contemporaneous notes, but from the docket sheet. Mr. Newton testified that he prepared his records from roughly contemporaneous notes. TR 217–19. Many of the entries, however, appear very similar to the Court's docket sheet entries. See TR 242–245, 279–280; POST-HEARING BRIEF OF THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA REGARDING ATTORNEYS' FEES, APPENDIX 6.

Finally, Mr. Newton's billing practices were not in conformance with accepted billing practices. He never billed anything less than five tenths of an hour, and rarely billed anything less than one full hour. TR 245. Plaintiffs' expert, Mr. Weil, however, stated that the appropriate method is to bill in tenths of hours. TR 89.

Thus, based on the excessiveness of Mr. Newton's claimed hours and the indications of unreliability of Mr. Newton's records, the Court will determine Mr. Newton's reasonable hours based on the Court's own experience. See Norman, 836 F.2d at 1303. The Court first deducts 57.40 hours from the time Mr. Newton billed in regard to single page motions.[30] Second, the Court reduces by ten

---

29. Other examples appear in Appendix Six (6) of the Board of Trustees of the University of Alabama's May 14, 1993 post-hearing brief regarding attorney's fees. That document compares Mr. Newton's billing entries with the date of filing of a document recorded on the docket sheet, the appellate document number, the number of substantive pages of a document, and other information.

30. The Court reduces the 60.00 hours Mr. Newton billed in regard to 26 single page motions to .10 hour for each entry. That yields only 2.60 hours of compensable hours, a reduction of 57.40 hours. See PLAINTIFF EXHIBIT 11; POST-HEAR-

percent the number of hours billed by Mr. Newton from May 1988 to the present. The Court does this based chiefly on the role Mr. Newton played in this case. Mr. Newton played only a limited role in discovery, in preparation of pleadings, and at trial. TR 261–264; 140–141. His role was mostly as a "liaison with the A & M Community." TR 140. The Court finds that a ten percent reduction more accurately reflects the number of hours for which the Court should compensate Mr. Newton.

Thus, the Court calculates Mr. Newton's compensable hours as follows. The Court adds to Mr. Newton's original request of 2,449.60 hours, the 20.00 hours he requests in Plaintiffs second fee petition and the 22.00 hours he requests in Plaintiffs Exhibit 12. From that, the Court subtracts the 293.00 hours Mr. Newton acknowledged were duplicative. That totals 2,198.60 hours. From that the Court subtracts the 828.60 hours Mr. Newton billed before he represented an actual party in this case, and the 57.40 hours the Court found excessive for reviewing one page documents. That totals 1,314.60 hours. From that the Court subtracts ten percent to account for Mr. Newton's excessive hours, which is 131.46 hours. That results in a final total of 1,183.14 hours.

### III. *Adjustment of Lodestar*

#### A. Enhancement For Contingency

■ Plaintiffs do not ask for **enhancement** based on contingency in their post-hearing brief, but have in the past asked for an upward adjustment in determining their hourly rates in light of the Supreme Court's opinion in *City of Burlington v. Dague*, —— U.S. ——, 112 S.Ct. 2638 120 L.Ed.2d 449 (1992). *See* TR 133–134; PLAINTIFFS' JULY 23, 1992 AMENDED MOTION OF KNIGHT AND SIMS PLAINTIFFS FOR AN INTERIM AWARD OF ATTORNEYS' FEES AND EXPENSES, PP. 2–6. The Supreme Court, however, plainly stated in *City of Burlington v. Dague*, that "no contingency enhancement whatever is compatible with the fee-shifting statutes." *City of Burlington*, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). *See also McKenzie*

*v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1186 (11th Cir.1993) (enhancement for contingency no longer available in light of *City of Burlington*).

Plaintiffs have also argued that *City of Burlington* should not be applied retroactively in this case. *See* PLAINTIFFS' JULY 23, 1992 AMENDED MOTION OF KNIGHT AND SIMS PLAINTIFFS FOR AN INTERIM AWARD OF ATTORNEYS' FEES AND EXPENSES, PP. 3–4. The Court disagrees. The Eleventh Circuit applied *City of Burlington* retroactively in *McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1186 (11th Cir.1993). That is consistent with the Eleventh Circuit's policy that new principles of law must be applied retroactively to all pending cases, if the court announcing the new principle of law applied it to the parties in the case. *See Lufkin v. McCallum*, 956 F.2d 1104 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 246. The Supreme Court did so in *City of Burlington v. Dague*. Thus, the Court will apply *City of Burlington* retroactively, and will not enhance Plaintiffs' attorneys' fees for contingency.

#### B. Extent of Plaintiff's Success

■ Plaintiffs claim they achieved tremendous success. Plaintiffs state that they prevailed on most of their claims, except for the land grant claim, the historical mission designation of historically black universities claim, and the multiculturalism claim. Plaintiffs point to the Court's exhaustive findings of fact and multi-million dollar Court-ordered payments benefitting the class. Defendants argue Plaintiffs' failure to prevail on a number of claims, including the land grant, mission designation, and multiculturalism claims, represent a failure to prevail on discrete claims, for which Plaintiffs should not recover attorneys' fees.

The Court will neither enhance Plaintiffs' fee based on their overall success, nor reduce Plaintiffs' fee based on their lack of success on certain claims. As to enhancement, the Court finds that Plaintiffs' claims arose from a common core of facts and involve related legal theories. The core of Plaintiffs' case is

that a system of higher education exists in Alabama, and that vestiges of discrimination remain in that system in contravention of the U.S. Constitution and Title VI. That overarching legal theory applies throughout the case.

In comparing the relief Plaintiffs sought with the relief Plaintiffs obtained, however, it is clear that Plaintiffs failed to obtain "excellent results." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. While Plaintiffs undoubtably obtained significant relief, on many claims Plaintiffs failed to obtain any relief. Plaintiffs did not prevail on their multiculturalism, restructuring of the Board of Trustees, and black student recruitment claims. *See Knight v. State of Alabama*, 787 F.Supp. at 1171–72, 1291–99, 1331–35. Furthermore, with only a few exceptions, Plaintiffs failed to prevail on their racial composition of student bodies and faculties, admissions requirements, and graduate school recruitment claims. *See Knight v. State of Alabama*, 787 F.Supp. at 1153–63, 1163–65, 1286–91, 1303–08. Moreover, in purely monetary terms, Plaintiffs sought $125 million in immediate payments, *Knight*, 787 F.Supp. at 1348–1352, but by Plaintiffs' own liberal calculations obtained payments benefitting the class of only $50 to $80 million.[31] KNIGHT PLAINTIFFS' POST-HEARING BRIEF CONCERNING INTERIM ATTORNEYS' FEES AND EXPENSES, PP. 27–28. Finally, while this case is of unquestionable importance to the state of Alabama, the remedies the Court awarded are in line with current law. *See* PLAINTIFFS EXHIBIT 10, NORMAN CHACHKIN DEP. PP. 99–109. Thus, the Court concludes that Plaintiffs have not surmounted their burden of proving that this is a "rare and exceptional case", which requires an adjustment to obtain a fair and reasonable award. *Delaware Valley*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098; *Blum*, 465 U.S. at 898, 104 S.Ct. at 1548.

■ As to a reduction in Plaintiffs' fees, the Court finds that while Plaintiffs failed to prevail on a number of claims, overall, Plaintiffs did obtain significant relief. The Court's Remedial Decree requires significant changes throughout Alabama's system of higher education, affecting admissions standards, funding, and course duplication. *See Knight v. State of Alabama*, 787 F.Supp. at 1377–1382. Moreover, the evidence presented as support for the "failed" claims did help prove that a system of higher education in Alabama exists, and define areas of discriminatory impact within that system. Therefore, the Court concludes that Plaintiffs may recover attorney's fees for all of their work, including work on claims on which they did not prevail.

### C. *Johnson* Factors

Plaintiffs also ask the Court to enhance Mr. Blacksher's attorney's fees because of the novelty and difficulty of the case and the skill requisite to prosecute the case. *See Johnson*, 488 F.2d 714. The Court, however, will not enhance Mr. Blacksher's rate as he requests based on those *Johnson* factors. The Supreme Court has made it clear that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Delaware Valley*, 478 U.S. at 566, 106 S.Ct. at 3098.[32]

> Because acknowledgement of the "results obtained" generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide and independent basis for increasing the fee award. Nor do we believe that the *number* of persons benefitted is a consideration of significance in calculating fees under § 1988.
>
> *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984).

31. Plaintiffs also suggest that "common fund" or "common benefit" cases, in which prevailing plaintiffs' attorneys are paid fees from the funds to be distributed to identifiable class members or monetary benefits that broad categories of citizens will receive from government agencies, are instructive as to whether the Court should enhance the lodestar figures. KNIGHT PLAINTIFFS POST-HEARING BRIEF CONCERNING INTERIM ATTORNEYS' FEES AND EXPENSES. PP. 29–32. Plaintiffs suggest that those cases indicate that an attorneys' fee award of a third of the of the value of the benefit to the class is appropriate. *Id.* at 31. However, as Plaintiffs acknowledge, the Supreme Court has rejected such an approach for fee awards under 42 U.S.C. § 1988. The Supreme Court has stated that:

32. In *Blum v. Stenson*, the Supreme Court found that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" in the litigation are presumably reflected in the lodestar amount. *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–49.

## D. Delay in Payment—Time Value of Money

The Court will use current rates applied to all of Plaintiffs' attorneys' hours to compensate Plaintiffs for the delay in payment. The Supreme Court has made clear that "[a]n adjustment for delay in payment is ... an appropriate factor in the determination of what constitutes a reasonable attorney's fee under section 1988." *See Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). Moreover, the Eleventh Circuit has stated that "where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." *See Norman*, 836 F.2d at 1302.

Furthermore, the Court notes that even if the Court chose to use historical rates to account for the delay in payment, Plaintiffs did not meet their burden of proving that Plaintiffs' historical rates were in line with the prevailing market rates for the Northern District of Alabama. *See Norman*, 836 F.2d at 1299. The only evidence that Plaintiffs introduced as to their historical rates was the testimony and calculations of their expert, Mr. Weil. He testified that based on his surveys of attorneys across the country, he used the typical 75th or 90th percentile fee rates for attorneys with similar experience for the entire southeastern region of United States to determine the historical rates for Plaintiffs' attorneys. *See* APRIL 26, 1993 TRANSCRIPT ("TR") 45–53, 80–84; KNIGHT PLAINTIFFS' POST-HEARING BRIEF CONCERNING INTERIM ATTORNEYS' FEES AND EXPENSES, APPENDIX C.

The Court, however, does not find that testimony persuasive because Mr. Weil based the rates on the average rates for all of the southeast, not the Northern District of Alabama. *See* APRIL 26, 1993 TRANSCRIPT ("TR") 45–53, 80–84; KNIGHT PLAINTIFFS' POST-HEARING BRIEF CONCERNING INTERIM ATTORNEYS' FEES AND EXPENSES, APPENDIX C. That is improper because Mr. Weil himself admitted that typical standard hourly rates for southern states included rates for lawyers practicing in much larger localities like Atlanta, Miami, and Northern Virginia, and that those rates are higher than rates in the Northern District of Alabama. TR 92–93.

Moreover, Defendants introduced evidence that the rates in the largest firms in Birmingham vary from $110.00—$210.00 for partners and from $70.00—$150.00 for associates, while the rates in Atlanta range from $135.00—$330.00 for partners and $95.00—$190.00 for associates, and the rates in Miami range from $165.00—$450.00 for partners and $75.00—$190.00 for associates. *See* UNIVERSITY OF ALABAMA EXHIBIT 2; TR 40–43, 81–82, 93. Thus, the 75th or 90th percentile rates for attorneys throughout the southeast is significantly higher than for attorneys in the Northern District of Alabama, which is the relevant legal community for determining rates in this case. *See Turner*, 944 F.2d at 808; *Norman*, 836 F.2d at 1299.

## IV. *Apportionment of Attorney's Fees*

Defendants AAMU and ASU, and Livingston University, Troy State University, University of South Alabama, University of Montevallo, Calhoun State Community College, and Athens State Community College argue that the Court should apportion attorney's fees according to the relative culpability of the Defendants.

The Court disagrees. District courts have wide discretion on whether to apportion attorney's fees, and must "achieve the most fair and sensible solution ... consistent with both efficiency and fairness." *Council for Periodical Distributors Ass'ns v. Evans*, 827 F.2d 1483, 1487–88 (11th Cir.1987). Here, it is apparent that some Defendants are more culpable than others. However, it is not apparent how the Court could fairly and accurately divide liability for the fees.

By way of example, in a case involving excessive use of force by multiple defendants, a court may be able to trace a victims injuries to specific acts of each Defendant and therefore, accurately and fairly divide liability for the attorney's fees among the defendants. This case, however, involves systemic wrongs over many years involving many defendants, making it difficult to fairly and accurately divide the fees among the defendants.

Thus, the Court finds that the most fair and efficient way to award attorneys' fees is simply to award them against the State of Alabama. This outcome is consistent with the Court's finding that a system of higher education exists in the State of Alabama and that vestiges of discrimination in violation of the Constitution and the laws of the United States remain throughout the system. *Knight v. State of Alabama,* 787 F.Supp. 1030, 1340 (N.D.Al.1991).

## V.  *Calculation of Award*

The Court awards attorneys' fees and expenses as follows for each attorney.

James Blacksher

| | | | |
|---|---|---|---|
| Attorney's Fees: | 5,026.10 hrs × $275.00 | = | $1,382,177.50 |
| | 333.60 hrs × $200.00 | = | $66,720.00 |
| | | + | |
| Expenses: | | + | $132,514.20 |
| Interim Attorney's Fee Award: | | − | $500,00.00 |
| | | | |
| **Total:** | | | **$1,081,411.70** |

Donald Watkins

| | | | |
|---|---|---|---|
| Attorney's Fees: | 1,025.80 hrs × $200.00 | = | $205,160.00 |
| Expenses: | | + | $1,578.04 |
| **Total:** | | | **$206,738.04** |

Demetrius Newton

| | | | |
|---|---|---|---|
| Attorney's Fees: | 1,183.14 hrs × $175.00 | = | $207,049.50 |
| Expenses: | | + | $0.00 |
| **Total:** | | | **$207,049.50** |

Gregory Stein

| | | | |
|---|---|---|---|
| Attorney's Fees: | 217.60 hrs × 200.00 | = | $43,520.00 |
| Expenses: | | + | $0.00 |
| **Total:** | | | **$43,520.00** |

Larry Menefee

| | | | |
|---|---|---|---|
| Attorney's Fees: | 277.30 hrs × $200.00 | = | $55,460.00 |
| Expenses: | | +. | $400.00 |
| **Total:** | | | **$55,860.00** |

Leslie Proll

| | | | |
|---|---|---|---|
| Attorney's Fees: | 2,386.50 hrs × $140.00 | = | $334,110.50 |
| | 215.60 hrs × $100.00 | = | $21,560.00 |
| | | + | |
| Expenses: | | + | $0.00 |
| Interim Attorney's Fee Award: | | − | $100,000.00 |
| **Total:** | | | **$255,670.50** |

Wanda G. Cochran

| | | | |
|---|---|---|---|
| Attorney's Fees: | 444.80 hrs × $140.00 | = | $62,272.00 |
| Expenses: | | + | $0.00 |
| **Total:** | | | **$62,272.00** |

Therefore, the Court awards Plaintiffs a total of $1,912,521.74 in additional attorneys' fees and expenses plus interest as provided by law on this amount from the date of the judgment on the merits of this case on December 30, 1991. The Court also awards Plaintiffs interest as provided by law on the $500,000.00 and $100,000.00 interim payments made to Mr. Blacksher and Ms. Proll, from the date of judgment on December 30, 1991 to the date of those awards on August 7, 1992.

Furthermore, the Court orders the attorneys' fees to be paid by the State of Alabama. To accommodate the interests of the parties the Court stays payment of these funds for 30 days from the date of this Order. Upon proper motion, the Court will modify the source of payment of these funds as the needs of the parties may necessitate.

VI. *Conclusion*

Accordingly, based on the above, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees, **AWARDS** Plaintiffs $1,912,521.74 in additional attorneys' fees and expenses, plus postjudgment interest on that amount as provided by law commencing on December 30, 1991, and postjudgment interest as provided by law on the $500,000.00 and $100,000.00 interim payments up to August 7, 1992, and **STAYS** payment of these funds for 30 days from the date of this Order. The State of Alabama shall dispense the money awarded to the persons, and in the amounts, delineated above.

IT IS SO ORDERED.